UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ROBERT McCONNELL,

Petitioner,

v.

WILLIAM REUBART, *et al.*,

Respondents.

Case No. 3:10-cv-00021-GMN-CSD

**ORDER**

## I.   SUMMARY

This action is a petition for writ of habeas corpus by Robert McConnell, a Nevada prisoner sentenced to death. The case is before the Court with respect to a motion to dismiss filed by the respondents and a related motion for evidentiary hearing filed by McConnell. In the motion to dismiss, Respondents assert that certain of McConnell's claims are barred by the statute of limitations, unexhausted and/or procedurally defaulted, and/or not ripe for review. The Court will grant the motion to dismiss in part and deny it in part. The Court will dismiss certain of McConnell's claims, as explained below. The Court will deny McConnell's motion for evidentiary hearing, without prejudice to McConnell making a new motion for an evidentiary hearing in conjunction with the briefing of the merits of his remaining claims, as contemplated in the scheduling order in this action. The Court will set a schedule for the respondents to file an answer.

## II.   BACKGROUND

The Nevada Supreme Court described the background of this case, as follows, in its opinion on McConnell's direct appeal:

> On August 7, 2002, McConnell shot Brian Pierce to death. Pierce lived with and planned to marry April Robinson, McConnell's former girlfriend. McConnell broke into the couple's home while they were at work. When Pierce returned and entered his front door, McConnell shot him repeatedly. Later, when Robinson came home, McConnell threatened

1

her with a knife, handcuffed her, and sexually assaulted her. He then kidnapped her, forcing her to drive to California. Robinson was able to escape and alerted authorities. McConnell was later arrested in San Francisco.

The State charged McConnell with first-degree murder, alleging theories of deliberate, premeditated murder and of felony murder during the perpetration of a burglary. The State also charged him with sexual assault and first-degree kidnapping. After the preliminary hearing, the State filed a Notice of Intent to Seek Death Penalty and alleged three aggravators: the murder was committed during the course of a burglary, was committed during the course of a robbery, and involved mutilation. Before trial, McConnell successfully moved to represent himself; the Public Defender served as standby counsel thereafter. McConnell then pleaded guilty, without benefit of a plea agreement, to sexual assault and first-degree kidnapping; judgment was entered accordingly, and he was sentenced to consecutive terms of life imprisonment with the opportunity of parole. He also pleaded guilty to first-degree murder, and a penalty hearing before a jury was set.

McConnell's penalty hearing began on August 25, 2003, and lasted four days. In his opening statement, McConnell said that he believed that the evidence would show four mitigating circumstances: he was acting under extreme emotional distress at the time of the murder; he had accepted responsibility for the crimes by pleading guilty; he had no significant prior criminal history in the way of violent felonies; and his behavior in custody was good.

The evidence at the hearing showed that Robinson met McConnell in Reno in 2000, and the two began dating. She broke up with him in the spring of 2001 and about eight months later became engaged to Pierce. Threats were exchanged between the couple and McConnell, and Robinson obtained a temporary protective order against McConnell. [Footnote omitted.] After breaking up with Robinson, McConnell told another girlfriend, Lisa Rose, that he was going to murder Pierce. Rose was so concerned that she twice notified the Secret Witness Program and also contacted Robinson. McConnell eventually left the Reno area.

About a year later, McConnell returned to the area. On August 4, 2002, he contacted his former roommate, Alejandro Monroy. When the two men met, Monroy noticed that McConnell was still fixated on Robinson and displayed aggression toward her. Monroy tried to persuade McConnell to let his feelings for Robinson go and to grow up.

Three days later, when Robinson came home from work at around 4:30 p.m., she noticed some unusual things. The window blinds were closed, a golf-ball-sized hole was in the outside paneling, and a blanket was lying in front of the door inside the house. Most unusual of all, however, was that her fiance, Brian Pierce, did not come outside to greet her. A few seconds after entering her home, Robinson saw a man dressed in black holding a knife. It took her a moment to realize that the man was McConnell, whom she had not heard from in months.

McConnell told Robinson, "Just shut the fuck up." He grabbed her arm, forced her into the master bedroom, threw her facedown on the bed, and handcuffed her. He then placed her on a couch and began talking to

her. About 20 minutes later, McConnell cut Robinson's shirt and bra off with the knife and took off her pants and panties. Placing her facedown on the bed again, he duct taped her arm to her leg, duct taped her eyes and mouth, and placed a towel over her head. He then sexually assaulted her vaginally, anally, and orally with his finger and penis.

Afterwards, McConnell asked Robinson for money, and she gave him seven dollars. Robinson then got dressed, and McConnell told her that if she made any wrong moves he was going to shoot her in front of her neighbors. She saw that he had a gun in a holster with two magazine clips and believed him. She also saw that he had a wallet and car keys that appeared to belong to Pierce. When she asked about Pierce, McConnell told her that Pierce was locked up in a U–Haul, being watched by other people. McConnell said that she would have to take him to California if Pierce was ever going to be set free.

Robinson and McConnell drove to California in her car. He told her that everything that was occurring was a part of his plan. She realized that McConnell "had been keeping track of ... when Brian and I went to work, when we got home, the activity at the house, our cars, where they were parked, how many dogs we had, where we sat in the house." As they approached San Francisco, Robinson began suspecting that Pierce was not a hostage and that McConnell was eventually going to kill her. After they stopped at a gas station, she was able to escape in the car. Robinson drove to a nearby hospital and contacted the police in San Mateo, California. She gave the police McConnell's backpack, which contained items such as a 9–millimeter semiautomatic handgun, bullet magazines, and handcuffs.

Early the next morning, on August 8, Washoe County Sheriff's Deputies responded to the reported kidnapping and sexual assault and arrived at Robinson's home. After kicking in the door and entering, the deputies found Pierce dead. He had suffered several gunshot wounds, and a knife was stuck in his torso. Underneath the knife was a videocassette entitled "Fear."

Dr. Christine Elliot, a forensic pathologist, performed an autopsy on Pierce's body. Pierce had suffered nine gunshot wounds. One gunshot wound behind his ear "appeared to be very close range or contact in nature." He had also suffered three stab wounds. Two stab wounds were the "most superficial," and a knife was still in the third wound. The lack of bleeding into the stab wounds suggested that they occurred postmortem. Pierce died from massive blood loss from the gunshot wounds.

Before his arrest, McConnell called his brother, Darren Bakondi, and asked him to send "money, things of that nature." Bakondi testified that McConnell was "kind of rambling" during the conversation: "He told me maybe he should kill himself. Or he said he might go out in a blaze of glory, maybe make the cops—maybe take a couple of them with him, or hopefully some kind of shootout or something."

Less than a week after the crimes, McConnell was arrested in San Francisco. He was extradited back to Nevada. While in custody, he made a number of drawings, had some recorded telephone conversations, and wrote a number of letters. These items were admitted as evidence against him. One item was a letter he wrote to Robinson after she testified at his

preliminary hearing. The letter had a cover sheet with "Rest in peace" and "1977–2002" (the years of Pierce's birth and death) written on it. The letter read in part:

> I hope this letter finds you before you kill yourself. Just think. Now you can be with your mom and Brian forever. That was some performance last Thursday. You almost had me feeling sorry for you.

> You should thank me, you know. I could get into your house anytime I wanted. Just think. Brian would still be alive if you had locked that window. How does that really make you feel, April? Late at night, alone, when you cry yourself to sleep. Yes, it is a nightmare. And it won't end until you finish the job on your arm.

The last sentence referred to an earlier attempt by Robinson to commit suicide. She, however, never received the letter. (Other items admitted into evidence will be discussed below.)

At the time of his murder, Pierce was 26 years old, attending college and studying graphic design. His younger sister, Kristine Pierce, testified that he had many friends. She loved him and looked to him for guidance. She described Pierce as "a brave person and a real man." Pierce's mother, Pam McCoy, spoke of her pride for her only son and stated, "He never spoke hurtful words. He was loyal. He was a loving son."

Pierce's stepmother, Sheryl Pierce, described Pierce as "a great kid" who held a Bible study class in his bedroom every week while growing up. She thought of him every day. Mrs. Pierce also described two telephone calls she received one night at home after the murder. In the first call, when she heard McConnell say his name on her answering machine, she broke the connection. McConnell called back about a minute later and said on her machine, "Your son died like a coward." Mrs. Pierce was "absolutely horrified" and "couldn't imagine why anyone would be so cruel and mean as to call someone he doesn't even know just to cause that kind of pain."

McConnell called three witnesses. His longtime best friend, Luis Vasquez, who managed a Reno car dealership, described McConnell as one of the best car salesmen he ever had. Vasquez took family vacations with McConnell and trusted him to baby-sit his children. Before the crimes, Vasquez told McConnell to "walk away" from his feelings for Robinson. He described McConnell as being "very, very depressed," and added that McConnell was crying and, at times, suicidal.

Misty Tackman, a receptionist at the car dealership where McConnell had worked, testified that Robinson once cursed at her and threatened to kill her with a knife.

Cassandra Gunther, the mother of McConnell's daughter, testified that she became pregnant in 1999 when she was 19 years old. McConnell pressured her into keeping the child, once threatening her life. Gunther ended the relationship, the child was born, and Gunther married another man. As Gunther wanted, McConnell had nothing to do with his daughter after the birth.

McConnell testified on his own behalf. He declined to give specific details about his childhood but stated that he and his mother did not get along. He said that he did not want to make excuses for his behavior because many people have bad experiences growing up. He added, "Everything I'm saying now is for the benefit of the Robinson and Pierce family." McConnell testified that initially his relationship with Robinson was great, but after he caught her cheating, things went downhill. She started spending time with Pierce, and McConnell began to get jealous and perceive Pierce as a threat. Threats between McConnell and Pierce were made "back and forth," but Pierce "wouldn't fight."

McConnell stated:

> I attempted to leave town, get away, because there was an instant where I was—I'm going to do something right now. I'm going to kill these people right now....
>
> ....
>
> I should have got the counseling maybe to deal with some other issues. I never did.
>
> And, you know, at some point I just—I don't want to say snap. It wasn't instantaneous, you know. I came back with a plan to murder. I did. When I crossed country, I came back, this is about revenge. I'm going to get these people, Brian, April.... And in my mind the war is on. The words have been said. The threats on both sides. So I am justified in whatever I do because, you know, they shouldn't have messed with me; they shouldn't have talked shit to me.
>
> And but then there was the other side where, you know, what the hell are you doing? And I would go back and forth....
>
> ....
>
> At some point on August 7th I did all the things they said.... You know, I was just kind of aimless, wandering around. But all of a sudden I became focused, and I did, and I just made the decision I'm going to do this. I'm going to retaliate against the people that ruined my life.

McConnell also said that

> I can't believe that I killed a Christian.... And to find out that I took the life of a person that goes to church and all this stuff that I find out, it hurts me now.
>
> At the time, yeah, very lack of remorse. I was pissed off. I admit to making those phone calls, the drawings on the wall. That was done absolutely, you know, on purpose ....
>
> ....

But in—with respect to this murder, ... I'm the coward. I ambushed Brian. He had no chance. Because of perceived threats or whatever, whatever I told myself for justification, you know, I took his life. You know, there's no excuse for that. And I have to answer to everybody.

He added, "I am sorry for what I did now. I really am."

Under cross-examination, McConnell described Pierce's murder on August 7. He had been watching Robinson's and Pierce's house with binoculars for two days before the murder. The morning of the murder, wearing a police-issue battle dress uniform, he broke into the house through an open window and took such things as bills, pictures, and notes to see what Robinson and Pierce had been doing.

McConnell reentered the home at around 12:20 p.m. and waited, determined to kill Pierce when he came home. Once Pierce came in the door, McConnell pointed his gun at him and said, "Give me your wallet." Pierce threw his wallet toward McConnell and reached for the door. McConnell fired his gun ten times. He approached Pierce because he wanted to look into his eyes to see him die. He then dragged Pierce's body into a bedroom and cut into it two or three times to dig out a "Black Talon" bullet to see what one looked like inside a body. McConnell then stuck a knife into Pierce's torso because he was "still mad." He placed the videotape "Fear" that he found at the house on the body as a message for Robinson. He also took credit cards out of Pierce's wallet.

McConnell explained that his actions were the result of emotional duress. Because this duress continued even after he was in custody, he boasted of murdering Pierce and took pleasure in making Pierce's family suffer. McConnell said he had since had a change of heart, but he also admitted that violence was still in his nature.

The jury found all three aggravating circumstances, determined that any mitigating circumstances were insufficient to outweigh the aggravating circumstances, and returned a verdict of death.

*McConnell v. State*, 120 Nev. 1043, 1049–54, 102 P.3d 606, 611–15 (2004) (a copy of

the opinion is found in the record at ECF No. 25-3, pp. 19–34).

McConnell did not file a notice of appeal; however, an appeal was automatic

under to Nev. Rev. Stat. § 177.055. Counsel was appointed for McConnell on the

appeal. *See* Written Findings of Appellant's Competence, Appointment of Counsel and

Stay of Death Sentence Pending Resolution of Appeal, Exh. 1 (ECF No. 106-1);

Appellant's Opening Brief, Exh. 1 (ECF No. 25-2); Appellant's Reply Brief, Exh. 2 (ECF

No. 25-3, pp. 1–17). On December 29, 2004, the Nevada Supreme Court affirmed

McConnell's conviction and sentence. *McConnell*, 120 Nev. 1043, 102 P.3d 606. The

State filed a petition for rehearing, and the Nevada Supreme Court denied that petition

on March 24, 2005. *McConnell v. State*, 121 Nev. 25, 107 P.3d 1287 (2005) (a copy of the opinion is found in the record at ECF No. 25-4). The Nevada Supreme Court issued its remittitur on April 19, 2005. *See* Remittitur, Exh. 4 (ECF No. 106-4).

McConnell filed a petition for writ of habeas corpus in the state district court on June 10, 2005. *See* Petition for Writ of Habeas Corpus, Exh. 5 (ECF No. 106-5). The court appointed counsel for McConnell. *See* Order Appointing Counsel, Exh. 7 (ECF No. 106-7). With counsel, McConnell filed a supplement to his petition on January 16, 2007. *See* Supplement to Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 10 (ECF No. 106-10). On June 11, 2007, the state district court ruled that McConnell's claims did not warrant post-conviction relief and dismissed his petition. *See* Order Dismissing Petition for Writ of Habeas Corpus, Exh. 5 (ECF No. 25-5). McConnell appealed. *See* Appellant's Opening Brief, Exh. 6 (ECF No. 25-6, ECF No. 25-7, pp. 1–28); Appellant's Reply Brief, Exh. 7 (ECF No. 25-7, pp. 29–76); Appellant's Supplemental Opening Brief, Exh. 8 (ECF No. 25-8, pp. 1–38). The Nevada Supreme Court affirmed on July 23, 2009. *McConnell v. State*, 125 Nev. 243, 212 P.3d 307 (2009) (as corrected July 24, 2009) (a copy of the opinion (uncorrected) is found in the record at ECF No. 25-8, pp. 39–63). The Nevada Supreme Court denied rehearing on October 6, 2009, and the court's remittitur was issued on November 3, 2009. *See* Remittitur, Exh. 17 (ECF No. 106-17).

McConnell initiated this federal habeas corpus action by filing a pro se petition for writ of habeas corpus on January 13, 2010 (ECF No. 1). After counsel was appointed for McConnell (ECF No. 14), he filed a first amended habeas petition with the benefit of counsel on October 6, 2010 (ECF No. 24).

On September 23, 2011, Respondents filed a motion to dismiss (ECF No. 53), arguing that several claims in McConnell's first amended petition were unexhausted in state court. In response, on January 23, 2012, McConnell filed a motion to stay this action (ECF No. 58), to allow him to exhaust his unexhausted claims. On July 27, 2012, the Court granted the motion for stay, and denied the motion to dismiss as moot, and

this action was stayed pending completion of McConnell's further state court proceedings. *See* Order entered July 27, 2012 (ECF No. 71).

Meanwhile, on November 1, 2010, McConnell had initiated a second habeas action in state court. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 493 (ECF No. 96-1). The state district court held an evidentiary hearing. *See* Transcript of Evidentiary Hearing, September 29, 2014, Exh. 518 (ECF No. 129-2); Transcript of Evidentiary Hearing, September 30, 2014, Exh. 519 (ECF No. 129-3); Transcript of Evidentiary Hearing, December 1, 2015, Exh. 521 (ECF No. 129-5); Transcript of Evidentiary Hearing, December 2, 2015, Exh. 522 (ECF No. 129-6). On June 27, 2016, the state district court denied McConnell's petition. *See* Order, Exh. 494 (ECF No. 96-2). McConnell appealed. *See* Appellant's Opening Brief, Exh. 484 (ECF No. 89-1); Appellant's Reply Brief, Exh. 486 (ECF No. 89-3). The Nevada Supreme Court affirmed on September 21, 2018. *See* Order of Affirmance, Exh. 487 (ECF No. 89-4) (*McConnell v. Baker*, 2018 WL 4613718 (2018) (unpublished)). The Nevada Supreme Court denied McConnell's petition for rehearing on December 21, 2018. *See* Petition for Rehearing, Exh. 488 (ECF No. 89-5); Order Denying Rehearing, Exh. 489 (ECF No. 89-6). On October 7, 2019, the United States Supreme Court denied McConnell's petition for writ of certiorari. *See* Petition for Writ of Certiorari, Exh. 490 (ECF No. 89-7); Letter Dated October 7, 2019, Exh. 491 (ECF No. 89-8); *McConnell v. Gittere*, 140 S.Ct. 61 (2019). The Nevada Supreme Court's remittitur was issued on October 11, 2019. *See* Remittitur, Exh. 492 (ECF No. 89-9).

The stay of this case was lifted, upon a motion by McConnell, on December 3, 2019. (ECF No. 91.) On May 6, 2020, McConnell filed a second amended petition for writ of habeas corpus (ECF No. 95), which is now his operative petition. McConnell's second amended petition asserts the following claims:

    1.     McConnell's federal constitutional rights were violated because of ineffective assistance of his trial counsel.

        A.     Trial counsel were subject to a conflict of interest.

B.     Trial counsel were ineffective in their communications with McConnell during the pre-trial period, resulting in his unknowing, involuntary, and unintelligent decisions to represent himself, to plead guilty, and to harm his own interest before and during the penalty hearing.

C.     Trial counsel were ineffective in failing to adequately investigate mitigation evidence during the pre-trial period.

D.     Trial counsel were ineffective before and during the hearing on McConnell's motion to represent himself.

2.     McConnell's waiver of counsel was constitutionally invalid because the court's canvass was inadequate, the court did not appoint conflict-free counsel to advise him, and counsel was ineffective in pre-trial proceedings.

A.     The trial court's *Faretta* canvass was insufficient.

B.     McConnell lacked conflict-free counsel leading up to his waiver of counsel and his counsel was ineffective during the pre-trial proceedings, including the *Faretta* hearing.

C.     McConnell's waiver of counsel was invalid under the intervening United States Supreme Court case of *Indiana v. Edwards*, 554 U.S. 164 (2008).

D.     The trial court improperly failed to appoint counsel before the sentencing hearing when it was apparent that counsel was necessary.

E.     The trial court failed to abide by its conditional order to appoint counsel when McConnell made a proper request that counsel be appointed for the limited purpose of allowing him to examine his ex-girlfriends.

F.     The trial court's failure to appoint counsel to examine McConnell's ex-girlfriends reduced the proceedings to a sham and a farce.

G.     McConnell was incapable of eliciting mitigation evidence regarding his childhood and family background.

3     McConnell's death sentence is constitutionally invalid because the Nevada Supreme Court failed to strike the felony murder aggravating circumstances.

4.     McConnell's death sentence is unconstitutional because the mutilation aggravating circumstance is unconstitutionally vague and overbroad.

5.      McConnell's death sentence is unconstitutional because the burglary aggravating circumstance is constitutionally invalid.

6.      McConnell's conviction and death sentence are unconstitutional because the trial court failed to adequately apprise McConnell of the consequences of his guilty plea.

7.      McConnell's death sentence is unconstitutional because the trial court denied his request for April Robinson's pre-sentence report and curtailed his cross-examination of her.

8.      McConnell's death sentence is unconstitutional because the trial court gave the jury erroneous instructions.

A.      The jury instructions failed to require that mitigation be outweighed by statutory aggravation beyond a reasonable doubt.

B.      The jury instructions improperly prohibited the jury from considering sympathy.

C.      The reasonable doubt instruction permitted the jury to convict McConnell based on a lesser standard of proof than is constitutionally required.

D.      The "equal and exact justice" instruction created a likelihood that the jury would not apply the presumption of innocence and would convict McConnell based on a lesser standard of proof than is constitutionally required.

9.      McConnell's death sentence is unconstitutional because of prosecutorial misconduct.

10.     McConnell's death sentence is unconstitutional because the trial court erroneously allowed the prosecution to introduce unduly prejudicial, lengthy, and irrelevant victim impact statements.

11.     McConnell's death sentence is unconstitutional because he was given inadequate notice of the prosecution's case in aggravation.

12.     McConnell's death sentence is unconstitutional because the trial court failed to bifurcate the penalty hearing.

13.     McConnell's death sentence is unconstitutional because of errors committed by the trial court and the prosecution in systemically removing all death scrupled jurors from the venire.

14.     McConnell's death sentence is unconstitutional because of jury misconduct.

15.     McConnell's conviction and death sentence are unconstitutional because his *Faretta* hearing, plea hearing, sentencing, and review on direct appeal were conducted before elected officials, and because the Nevada Supreme Court's automatic review of capital sentences is inadequate.

A.      The Nevada Supreme Court's automatic review of capital sentences is inadequate.

B.      McConnell's *Faretta* hearing, plea hearing, sentencing, and review on direct appeal were conducted before elected officials.

16.     McConnell's federal constitutional rights were violated because of ineffective assistance of his appellate counsel because his appellate counsel was subject to conflicts of interest and failed to raise issues on appeal.

17.     McConnell's conviction and death sentence are unconstitutional because of the cumulative effect of the errors alleged.

18.     Nevada's death penalty is unconstitutional.

A.      Execution by lethal injection is unconstitutional.

1.      Execution by lethal injection is unconstitutional in all circumstances.

2.      Execution by lethal injection as it would be carried out in Nevada is unconstitutional.

B.      Nevada's death-penalty scheme does not narrow the class of persons eligible for the death penalty.

C.      The death penalty is cruel and unusual.

D.      Nevada's death-penalty scheme is unconstitutional because executive clemency is unavailable.

E.      Nevada's death-penalty scheme operates in an unconstitutionally arbitrary and capricious manner.

F.      Trial and appellate counsel were ineffective for failing to raise the claims in 18A, 18B, 18C, 18D and 18E.

Second Amended Petition (ECF No. 95).

On May 28, 2021, Respondents filed the motion to dismiss that is now before the Court (ECF No. 122). In the motion to dismiss, Respondents argue that certain of McConnell's claims are barred by the statute of limitations, unexhausted and/or procedurally defaulted, and/or not ripe for review. McConnell filed an opposition to the motion to dismiss on October 18, 2021 (ECF No. 128), and Respondents filed a reply on February 28, 2022 (ECF No. 145).

Along with his opposition to the motion to dismiss, McConnell filed a motion for an evidentiary hearing (ECF No. 130). Respondents have filed an opposition to that motion (ECF No. 146), and McConnell has filed a reply (ECF No. 150).

## III.   DISCUSSION

### A.   Statute of Limitations

#### 1.   General Legal Standards

The Antiterrorism and Effective Death Penalty Act (AEDPA), enacted in 1996, established a one-year statute of limitations for federal habeas petitions filed by prisoners challenging state convictions or sentences; the statue provides:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of --

>> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

>> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

>> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

>> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. 2244(d)(1). The AEDPA statute of limitations is tolled during the time that a properly filed application for state post-conviction or other collateral review is pending in state court. *See* 28 U.S.C. § 2244(d)(2).

#### 2.   Application of the Statute of Limitations in this Case

McConnell's conviction became final on June 22, 2005, which was 90 days after the Nevada Supreme Court denied the State's petition for rehearing of his direct appeal on March 24, 2005. *See McConnell*, 121 Nev. 25, 107 P.3d 1287 (denying petition for rehearing on March 24, 2005); *see also Bowen v. Roe*, 188 F.3d 1157, 1158–59 (9th

Cir. 1999) ("We hold that the period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the period within which a petitioner can file for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition. Therefore, when a petitioner fails to seek a writ of certiorari from the United States Supreme Court, the AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires.").

McConnell filed his first state habeas petition on June 10, 2005. before his conviction became final. *See* Petition for Writ of Habeas Corpus, Exh. 5 (ECF No. 106-5). That tolled the AEDPA limitations period under 28 U.S.C. § 2244(d)(2). Therefore, the AEDPA limitations period was tolled from the time McConnell's conviction became final on June 22, 2005, until the Nevada Supreme Court's remittitur was issued on November 3, 2009, concluding McConnell's first state habeas action. *See* Remittitur, Exh. 17 (ECF No. 106-17).

The AEDPA limitations period relative to McConnell's federal habeas petition began to run on November 3, 2009, and it ran out on November 3, 2010. Therefore, McConnell's original petition (ECF No. 1), filed on January 13, 2010, and his first amended petition (ECF No. 24), filed October 6, 2010, were filed before the limitations period expired, but his second amended petition (ECF No. 95), filed April 3, 2020, was filed long after the limitations period expired. This much appears to be undisputed. *See* Motion to Dismiss (ECF No. 122), p. 6 (Respondents' assertion that the limitations period ran out on November 3, 2010); Opposition to Motion to Dismiss (ECF No. 128), pp. 6–33 (McConnell treating his original and first amended petitions as filed before expiration of the limitations period and treating his second amended petition as filed after expiration of the limitations period).

Therefore, absent a showing that the limitations period for a particular claim commenced to run on a later date under 28 U.S.C. 2244(d)(1)(B), (C) or (D), the application of the statute of limitations to the claims in McConnell's second amended petition turns on the question whether those claims relate back to McConnell's original

or first amended petition. In *Mayle v. Felix*, 545 U.S. 644 (2005), the Supreme Court held that "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order," but "[a]n amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle*, 545 U.S. at 650, 664.

### B.    Exhaustion of State Court Remedies

#### 1.    General Legal Standards

A federal court may not grant relief on a habeas corpus claim not exhausted in state court. 28 U.S.C. § 2254(b). The exhaustion doctrine is based on the policy of federal-state comity, and is designed to give state courts the initial opportunity to correct alleged constitutional deprivations. *See Picard v. Conner*, 404 U.S. 270, 275 (1971). To exhaust a claim, a petitioner must fairly present that claim to the State's highest court and must give that court the opportunity to address and resolve it. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam); *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). The "fair presentation" requirement is satisfied when the claim has been presented to the highest state court by describing the operative facts and the legal theory upon which the federal claim is based. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Batchelor v. Cupp*, 693 F.2d 859, 862 (9th Cir.1982), *cert. denied*, 463 U.S. 1212 (1983). To fairly present a federal constitutional claim to the state court, the petitioner must alert the court to the fact that he asserts a claim under the United States Constitution. *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir.1999), *cert. denied*, 529 U.S. 1009 (2000), citing *Duncan*, 513 U.S. at 365–66.

#### 2.    Anticipatory Default

The Supreme Court has recognized that under certain circumstances it may be appropriate for a federal court to anticipate the state-law procedural bar of an unexhausted claim, and to treat such a claim as subject to the procedural default doctrine. "An unexhausted claim will be procedurally defaulted, if state procedural rules

would now bar the petitioner from bringing the claim in state court." *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)).

In light of the procedural history of this case, and, in particular, the rulings of the state courts in McConnell's second state habeas action, it is plain that McConnell's unexhausted claims would be ruled procedurally barred in state court if McConnell were to return to state court to exhaust those claims. Therefore, the anticipatory default doctrine applies, and the Court considers McConnell's unexhausted claims to be technically exhausted, but subject to the procedural default doctrine. *See Dickens*, 740 F.3d at 1317.

**C.    Procedural Default**

*1.    General Legal Standards*

In *Coleman v. Thompson*, the Supreme Court held that a state prisoner who fails to comply with the State's procedural requirements in presenting his claims is barred by the adequate and independent state ground doctrine from obtaining a writ of habeas corpus in federal court. *Coleman*, 501 U.S. at 731-32 ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."). Where such a procedural default constitutes an adequate and independent state ground for denial of habeas corpus, the default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting from it. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey*

*v. Zant*, 499 U.S. 467, 497 (1991). With respect to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)).

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court ruled that ineffective assistance of post-conviction counsel may serve as cause, to overcome the procedural default of a claim of ineffective assistance of trial counsel. In *Martinez*, the Supreme Court noted that it had previously held, in *Coleman*, that "an attorney's negligence in a postconviction proceeding does not establish cause" to excuse a procedural default. *Martinez*, 566 U.S. at 15 (citing *Coleman*, 501 U.S. at 746–47). The *Martinez* Court, however, "qualif[ied] *Coleman* by recognizing a narrow exception: inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 9. The Court described "initial-review collateral proceedings" as "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." *Id*. at 8.

> 2.    *Adequacy of Nev. Rev. Stat. §§ 34.726 and 34.810*

A state procedural rule is "adequate" if it was "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. United States Dist. Court* (*Bean*), 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted); *see also Ford v. Georgia*, 498 U.S. 411, 424 (1991) (state procedural rule adequate if "firmly established and regularly followed by the time as of which it is to be applied" (citation and internal quotation marks omitted)); *Lambright v. Stewart*, 241 F.3d 1201, 1203 (9th Cir. 2001).

In *Bennett v. Mueller*, 322 F.3d 573, 585–86 (9th Cir. 2003), the Ninth Circuit Court of Appeals established a burden-shifting test for analyzing adequacy. Under *Bennett*, the State carries the initial burden of pleading "the existence of an independent

16

and adequate state procedural ground as an affirmative defense." *Bennett*, 322 F.3d at 586. The burden then shifts to the petitioner "to place that defense in issue," which the petitioner may do "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id*. If the petitioner meets this burden, "the ultimate burden" of proving the adequacy of the procedural rule rests with the State, which must demonstrate "that the state procedural rule has been regularly and consistently applied in habeas actions." *Id*.; *see also King v. Lamarque*, 464 F.3d 963, 966–67 (9th Cir. 2006).

With respect to Nev. Rev. Stat. § 34.810, Respondents meet their initial burden under *Bennett* by asserting that the Nevada Supreme Court applied that statute to bar certain of McConnell's claims. *See* Motion to Dismiss (ECF No. 122), p. 19.

McConnell responds by citing *Sechrest v. Ignacio*, 549 F.3d 789 (9th Cir. 2008), and *Valerio v. Crawford*, 306 F.3d 742 (9th Cir. 2002), and noting that in those cases the Ninth Circuit Court of Appeals ruled Nev. Rev. Stat. § 34.810 to be inadequate to support application of the procedural default doctrine. Opposition to Motion to Dismiss (ECF No. 128), p. 66. McConnell's argument is as follows:

> The NSC [Nevada Supreme Court] applied Nev. Rev. Stat. § 34.810, Nevada's successive petition bar to Mr. McConnell's petition. *See generally* ECF No. 89-4. However, the Ninth Circuit has concluded that Nev. Rev. Stat. § 34.810 is an inadequate state procedural bar to federal habeas review in capital cases. *See Sechrest v. Ignacio*, 549 F.3d 789, 803 (9th Cir. 2008) (relying on *Valerio v. Crawford*, 306 F.3d 742, 778 (9th Cir. 2002)). Thus, it cannot bar review here as applied to any of the claims in Mr. McConnell's first or second post-conviction proceedings.

*Ibid*.

In *Valerio*, the Ninth Circuit Court of Appeals held that Nevada's successive petition bar was inadequate to bar federal review in capital cases. *Valerio*, 306 F.3d at 777–78. In *Sechrest*, the court of appeals followed *Valerio*. *Sechrest*, 549 F.3d at 803 ("*Valerio* controls the outcome of the procedural default issue in this case.").

Respondents argue that *Valerio* and *Sechrest* are irreconcilable with the Supreme Court's subsequent decisions in *Beard v. Kindler*, 558 U.S. 53 (2009), and *Walker v. Martin*, 562 U.S. 307 (2011), because the Supreme Court in those cases rejected the notion that a state court's discretionary application of a procedural rule necessarily renders it inadequate to bar federal review. *See* Reply in Support of Motion to Dismiss (ECF No. 145), pp. 24–25. In *Valerio*, the court noted a handful of capital cases in which the Nevada Supreme Court bypassed Nev. Rev. Stat. § 34.810 to reach the merits of a capital petitioner's claim(s). *See Valerio*, 306 F.3d 776–77. Relying on those cases, the court of appeals concluded that the Nevada Supreme Court "exercised a general discretionary power" to address the merits of defaulted claims and on that basis determined that Nev. Rev. Stat. § 34.810 was not an adequate bar to federal review. *Id*. at 778. *Valerio* and *Sechrest* have been called into question by *Beard* and *Walker*. *See Beard*, 558 U.S. at 60–61 (holding that "a discretionary state procedural rule can serve as an adequate ground to bar federal habeas review," because it can be considered "firmly established" and "regularly followed") and *Walker*, 562 U.S. at 320 (explaining that a rule is not automatically inadequate "upon a showing of seeming inconsistencies" and that the state court must be allowed discretion "to avoid the harsh results that sometimes attend consistent application of an unyielding rule").

Furthermore, *Valerio* and *Sechrest* both addressed the adequacy of Nev. Rev. Stat. § 34.810 during a time period that was long before the procedural default in this case. The court in *Valerio* held that section 34.810 was inadequate in 1990. *Valerio*, 306 F.3d at 778. The court in *Sechrest* held that section 34.810 was inadequate in 1985. *Sechrest*, 549 F.3d at 803. In this case, McConnell's briefing on his direct appeal was filed in 2004 (*see* Appellant's Opening Brief, Exh. 1 (ECF No. 25-2); Appellant's Reply Brief, Exh. 2 (ECF No. 25-3, pp. 1–17)), and McConnell initiated his first state habeas action in 2005 (*see* Petition for Writ of Habeas Corpus, Exh. 5 (ECF No. 106-5)).

Because *Sechrest* and *Valerio* concerned the adequacy of Nev. Rev. Stat. § 34.810 during a much earlier time period than is relevant in this case, and because those cases predated the Supreme Court cases of *Beard* and *Walker*, the Court determines that McConnell's mere citation of *Sechrest* and *Valerio* does not satisfy his burden under *Bennett* "to place [the procedural default] defense in issue" by "asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *See Bennett*, 322 F.3d at 585–86. The Court, therefore, determines that Nev. Rev. Stat. § 34.810 is adequate to support application of the procedural default doctrine in this case.

With respect to Nev. Rev. Stat. § 34.726, Respondents meet their initial burden under *Bennett* by asserting that the Nevada Supreme Court applied that statute, as well, to bar certain of McConnell's claims. *See* Motion to Dismiss (ECF No. 122), p. 19. McConnell responds by stating in a conclusory manner that Nev. Rev. Stat. § 34.726 is inadequate, but he makes no argument supporting that assertion. *See* Opposition to Motion to Dismiss (ECF No. 128), pp. 65–66. McConnell does not satisfy his burden under *Bennett* with respect to section 34.726. The Court determines that Nev. Rev. Stat. § 34.726 is adequate to support application of the procedural default doctrine in this case.

    *3. Independence of Nev. Rev. Stat. §§ 34.726 and 34.810*

On the appeal in McConnell's second state habeas action, the Nevada Supreme Court ruled McConnell's entire petition to be procedurally barred under Nev. Rev. Stat. §§ 34.726 (statute of limitations) and 34.810 (successive petitions). *See* Order of Affirmance, Exh. 487 (ECF No. 89-4).

Citing *Rippo v. Baker*, 137 S.Ct. 905 (2017) (per curiam), McConnell argues that the Nevada Supreme Court's application of those statutes to bar his second state habeas petition was not independent of federal law and, therefore, cannot support

1  application of the procedural default doctrine. *See* Opposition to Motion to Dismiss (ECF

2  No. 128), pp. 67–69.

3  "For a state procedural rule to be 'independent,' the state law basis for the

4  decision must not be interwoven with the federal law." *Park v. California*, 202 F.3d 1146,

5  1152 (2000) (citing *Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983)). The state

6  procedural rule is "so interwoven if 'the state has made application of the procedural bar

7  depend on an antecedent ruling on federal law [such as] the determination of whether

8  federal constitutional error has been committed.'" *Ibid* (quoting *Ake v. Oklahoma*, 470

9  U.S. 68, 75 (1985)).

10  McConnell relies on a footnote in *Rippo* and argues that the state-law procedural

11  rules were not applied independently of federal law because the Nevada Supreme

12  Court considered the merits of his claims in determining that he did not show cause and

13  prejudice to overcome procedural bars. *See* Opposition to Motion to Dismiss (ECF No.

14  128), pp. 67–69. In *Rippo*, the Supreme Court reviewed, and overruled, the Nevada

15  Supreme Court's holding regarding a substantive federal-law claim in the case—a claim

16  of unconstitutional judicial bias. *See Rippo*, 137 S.Ct. at 906–07. In a footnote, the Court

17  stated:

18  The [Nevada Supreme Court] further relied on its bias holding to
determine that Rippo had not established cause and prejudice to
19  overcome various state procedural bars. 132 Nev., at—, 368 P.3d, at 745.
Because the court below did not invoke any state-law grounds
20  "independent of the merits of [Rippo's] federal constitutional challenge,"
we have jurisdiction to review its resolution of federal law. *Foster v.*
21  *Chatman*, 578 U.S.——, —, 136 S.Ct. 1737, 1746, 195 L.Ed.2d 1 (2016).

22  *Id*. at 907 n.1. The Supreme Court recognized that in that case the Nevada Supreme

23  Court's analysis and ruling of the substantive federal claim was antecedent to its ruling

24  regarding the procedural bars. The Nevada Supreme Court had invoked the law of the

25  case doctrine and relied on an earlier ruling on the merits of the judicial bias claim in

26  ruling on the procedural bars. *See Rippo v. State*, 132 Nev. 95, 116–19, 368 P.3d 729,

27  743–45 (2016). That is not the case here. In this case, the Nevada Supreme Court first

28  identified the procedural bars, and stated: "Accordingly, the petition was procedurally

barred absent a demonstration of good cause and prejudice, *see* NRS 34.726(1); NRS 34.810(1)-(3), or a showing that the procedural bars should be excused to prevent a fundamental miscarriage of justice, *see Pellegrini v. State*, 117 Nev. 860, 887, 34 P.3d 519, 537 (2001)." Order of Affirmance, Exh. 487, pp. 1–2 (ECF No. 89-4, pp. 2–3). Only then did the court go on to determine that McConnell failed to show cause and prejudice. *See id.* at 2–9 (ECF No. 89-4, pp. 3–10). In this case, the Nevada Supreme Court's consideration of the merits of the federal claims was not antecedent to the ruling regarding the procedural bars.

Where a state court considers the merits of a claim only to demonstrate that the petitioner cannot overcome a state-law procedural bar of the claim, the procedural bar remains independent of federal law, such that it supports application of the procedural default doctrine. *See Nitschke v. Belleque*, 680 F.3d 1105, 1111–12 (9th Cir. 2012) (holding that the Oregon Court of Appeals' application of the Oregon "plain error" rule to the petitioner's federal law claim was independent of federal law); *Moran v. McDaniel*, 80 F.3d 1261, 1268–70 (1996) (holding a Nevada procedural rule independent where the Nevada Supreme Court discussed the merits of the claim "strictly for the purpose of demonstrating that [the petitioner could not] overcome his procedural defaults by a showing of cause and prejudice").

The Court finds that the Nevada Supreme Court considered the merits of McConnell's claims only to demonstrate that McConnell did not overcome the procedural bars, and the consideration of the merits of the claims was not antecedent to the cause-and-prejudice determination. The Nevada Supreme Court's application of the procedural bars was independent of federal law, such that it can support application of the procedural default doctrine.

### D.    Claim-Specific Analysis

#### 1.    Claim 1A

In Claim 1A, McConnell claims that his federal constitutional rights were violated because of ineffective assistance of his trial counsel, because his trial counsel were

subject to a conflict of interest. Second Amended Petition (ECF No. 95), pp. 6–28. (In this order, the Court refers to the counsel who represented McConnell for a time in the state district court, before trial, as his "trial counsel.")

Respondents argue that Claim 1A is barred by the statute of limitations. *See* Motion to Dismiss (ECF No. 122), pp. 6–7; Reply (ECF No. 145), pp. 13–16. The Court disagrees. Claim 1A, as asserted in McConnell's second amended petition, shares a common core of operative fact with Claim 1A of McConnell's first amended petition (ECF No. 24 at 6–12), and, therefore, Claim 1A relates back to the first amended petition and is not barred by the statute of limitations. The Court will deny Respondents' motion to dismiss Claim 1A on statute of limitations grounds.

Respondents also contend that Claim 1A is procedurally defaulted. *See* Motion to Dismiss (ECF No. 122), pp. 20–21; Reply (ECF No. 145), pp. 28–30. McConnell argues that, because Claim 1A is a claim of ineffective assistance of trial counsel, he can overcome any procedural default of the claim by showing cause and prejudice, on account of ineffective assistance of his state post-conviction counsel, under *Martinez*. *See* Opposition to Motion to Dismiss (ECF No. 128), pp.106–15. This issue, though, is intertwined with the merits of Claim 1A (as it involves the question whether the underlying claim is substantial); therefore, the Court determines that it will be better addressed in conjunction with the merits of the claim, after Respondents file an answer and McConnell files a reply. Consequently, the Court will deny Respondents' motion to dismiss Claim 1A on procedural default grounds, without prejudice to Respondents asserting the procedural default defense to Claim 1A in their answer.

　　　　　2.　　*Claim 1B*

In Claim 1B, McConnell claims that his federal constitutional rights were violated because of ineffective assistance of his trial counsel, because trial counsel were ineffective in their communications with McConnell during the pre-trial period, resulting in his unknowing, involuntary, and unintelligent decisions to represent himself, to plead

guilty, and to harm his own interest before and during the penalty hearing. Second Amended Petition (ECF No. 95), pp. 6–8, 28–36.

Respondents argue that Claim 1B is barred by the statute of limitations. *See* Motion to Dismiss (ECF No. 122), p. 7; Reply (ECF No. 145), p. 16. The Court, however, determines that Claim 1B, as asserted in McConnell's second amended petition, shares a common core of operative fact with Claim 1B of McConnell's first amended petition (ECF No. 24 at 6–7, 12–17), and, therefore, Claim 1B relates back to the first amended petition and is not barred by the statute of limitations. The Court will deny Respondents' motion to dismiss Claim 1B on statute of limitations grounds.

Respondents also contend that Claim 1B is procedurally defaulted. *See* Motion to Dismiss (ECF No. 122), p. 21; Reply (ECF No. 145), pp. 30–31. McConnell argues that, because Claim 1B is a claim of ineffective assistance of trial counsel, he can overcome any procedural default of the claim by showing cause and prejudice, on account of ineffective assistance of his state post-conviction counsel, under *Martinez*. *See* Opposition to Motion to Dismiss (ECF No. 128), pp.106–12, 116–17. This issue, though, is intertwined with the merits of Claim 1B; therefore, the Court determines that it will be better addressed in conjunction with the merits of the claim, after Respondents file an answer and McConnell files a reply. Consequently, the Court will deny Respondents' motion to dismiss Claim 1B on procedural default grounds, without prejudice to Respondents asserting the procedural default defense to Claim 1B in their answer.

### 3. Claim 1C

In Claim 1C, McConnell claims that his federal constitutional rights were violated because of ineffective assistance of his trial counsel, because trial counsel were ineffective in failing to adequately investigate mitigation evidence during the pre-trial period. Second Amended Petition (ECF No. 95), pp. 6–8, 36–152.

Respondents argue that Claim 1C is barred by the statute of limitations. *See* Motion to Dismiss (ECF No. 122), pp. 7–8; Reply (ECF No. 145), pp. 16–17. The Court, however, determines that Claim 1C, as asserted in McConnell's second amended

1 petition, shares a common core of operative fact with Claim 1C of McConnell's first

2 amended petition (ECF No. 24 at 6–7, 18–95), and, therefore, Claim 1C relates back to

3 the first amended petition and is not barred by the statute of limitations. The Court will

4 deny Respondents' motion to dismiss Claim 1C on statute of limitations grounds.

5   Respondents contend that Claim 1C is procedurally defaulted. *See* Motion to

6 Dismiss (ECF No. 122), p. 21; Reply (ECF No. 145), p. 31. McConnell argues that,

7 because Claim 1C is a claim of ineffective assistance of trial counsel, he can overcome

8 any procedural default of the claim by showing cause and prejudice, on account of

9 ineffective assistance of his state post-conviction counsel, under *Martinez*. *See*

10 Opposition to Motion to Dismiss (ECF No. 128), pp.106–12, 118–29. This issue, though,

11 is intertwined with the merits of Claim 1C; therefore, the Court determines that it will be

12 better addressed in conjunction with the merits of the claim, after Respondents file an

13 answer and McConnell files a reply. Consequently, the Court will deny Respondents'

14 motion to dismiss Claim 1C on procedural default grounds, without prejudice to

15 Respondents asserting the procedural default defense to Claim 1C in their answer.

16   *4. Claim 1D*

17   In Claim 1D, McConnell claims that his federal constitutional rights were violated

18 because of ineffective assistance of his trial counsel, because trial counsel were

19 ineffective before and during the hearing on McConnell's motion to represent himself.

20 Second Amended Petition (ECF No. 95), pp. 6–8, 152–58.

21   Respondents concede, and the Court finds, that Claim 1D of McConnell's second

22 amended petition relates back to Claim 1D of his first amended petition, and, therefore,

23 is not barred by the statute of limitations. *See* Motion to Dismiss (ECF No. 122), p. 8;

24 Reply (ECF No. 145), p. 17; *see also* First Amended Petition (ECF No. 24), pp. 6–7,

25 95–99). The Court will deny Respondents' motion to dismiss Claim 1D on statute of

26 limitations grounds.

27   Respondents contend that Claim 1D is, either in part or in its entirety,

28 procedurally defaulted. *See* Motion to Dismiss (ECF No. 122), pp. 21–22; Reply (ECF

No. 145), pp. 31–32. McConnell argues that, because Claim 1D is a claim of ineffective assistance of trial counsel, he can overcome any procedural default of the claim by showing cause and prejudice, on account of ineffective assistance of his state post-conviction counsel, under *Martinez*. *See* Opposition to Motion to Dismiss (ECF No. 128), pp.106–12, 129–33. This issue, though, is intertwined with the merits of Claim 1D; therefore, the Court determines that it will be better addressed in conjunction with the merits of the claim, after Respondents file an answer and McConnell files a reply. Consequently, the Court will deny Respondents' motion to dismiss Claim 1D on procedural default grounds, without prejudice to Respondents asserting the procedural default defense to Claim 1D in their answer.

### 5.    Claim 1E

Claim 1E of McConnell's second amended petition is entitled "Prejudice." *See* Second Amended Petition (ECF No. 95), p. 158. There, McConnell asserts that he was prejudiced by the ineffective assistance of trial counsel alleged in Claims 1A, 1B, 1C and 1D. *Id*. at 158–60. The Court does not understand Claim 1E to set forth a separate claim, but, rather, only to add to Claims 1A, 1B, 1C and 1D. The Court treats Claim 1E as such in this order. The motion to dismiss will be denied with respect to what is designated Claim 1E in the second amended petition.

### 6.    Claim 2A

In Claim 2A, McConnell claims that his federal constitutional rights were violated because the trial court's canvass pursuant to *Faretta v. California*, 422 U.S. 806 (1975), was insufficient. Second Amended Petition (ECF No. 95), pp. 161–67.

Respondents concede, and the Court finds, that Claim 2A of McConnell's second amended petition relates back to Claim 2A of his first amended petition, and, therefore, is not barred by the statute of limitations. *See* Motion to Dismiss (ECF No. 122), p. 8; Reply (ECF No. 145), p. 18; *see also* First Amended Petition (ECF No. 24), pp. 102–05. The Court will deny Respondents' motion to dismiss Claim 2A on statute of limitations grounds.

Respondents argue that Claim 2A is procedurally defaulted. *See* Motion to Dismiss (ECF No. 122), pp. 23–24; Reply (ECF No. 145), p. 33. The Court agrees. McConnell first asserted this claim in his second state habeas petition. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 493, pp. 108–11 (ECF No. 96-1, pp. 109–12). The Nevada Supreme Court ruled McConnell's entire second state habeas petition to be procedurally barred under Nev. Rev. Stat. §§ 34.726 and 34.810. *See* Order of Affirmance, Exh. 487 (ECF No. 89-4). The Court determines that Nev. Rev. Stat. §§ 34.726 and 34.810 are both adequate to support application of the procedural default doctrine. *See* Part III.C.2., *supra*. The Court also determines that the Nevada Supreme Court's application of Nev. Rev. Stat. §§ 34.726 and 34.810 was independent of federal law. *See* Part III.C.3., *supra*. McConnell does not make any showing of cause and prejudice relative to the procedural default of this claim, or any other showing that excuses the procedural default. The Court will grant Respondents' motion to dismiss Claim 2A on the ground of procedural default.

### 7.    *Claim 2B*

In Claim 2B, McConnell claims that his federal constitutional rights were violated because he lacked conflict-free counsel leading up to his waiver of counsel and his counsel was ineffective during the pre-trial proceedings, including the *Faretta* hearing. Second Amended Petition (ECF No. 95), pp. 161–62, 167–71.

This claim reiterates claims made by McConnell in Claims 1A, 1B, 1C, 1D and 1E. As the Court will deny Respondents' motion to dismiss with respect to those claims, the Court will deny the motion to dismiss with respect to Claim 2B for the same reasons.

### 8.    *Claim 2C*

In Claim 2C, McConnell claims that his waiver of counsel was invalid under the intervening United States Supreme Court case of *Indiana v. Edwards*, 554 U.S. 164 (2008). Second Amended Petition (ECF No. 95), pp. 161–62, 171–73.

Claim 2C is essentially the same claim as Claim 2A, but with argument regarding the implications of a particular Supreme Court case. As with Claim 2A, Respondents

concede that Claim 2C of McConnell's second amended petition relates back to his first amended petition, and, therefore, is not barred by the statute of limitations. *See* Motion to Dismiss (ECF No. 122), pp. 8–9; Reply (ECF No. 145), p. 19. The Court will deny Respondents' motion to dismiss Claim 2C on statute of limitations grounds.

Respondents argue that Claim 2C is procedurally defaulted. *See* Motion to Dismiss (ECF No. 122), pp. 23–24; Reply (ECF No. 145), p. 33. The Court agrees. McConnell first asserted a claim like Claim 2C on the appeal in his first state habeas action, by moving for leave to present the claim in supplemental briefing, *see* Appellant's Supplemental Opening Brief*,* Exh. 8 (ECF No. 25-8, pp. 1–39), but the Nevada Supreme Court denied that motion because McConnell had not raised the issue in the state district court, and he did not make a showing of cause and prejudice relative to his failure to do so. *See* Order Denying Motion to File Supplemental Opening Brief, Exh. 463 (ECF No. 59-1, pp. 45–47). McConnell then asserted claims in his second state habeas petition that encompassed what is Claim 2C in this case. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 493, pp. 108–29 (ECF No. 96-1, pp. 109–30). The Nevada Supreme Court ruled McConnell's entire second state habeas petition to be procedurally barred under Nev. Rev. Stat. §§ 34.726 and 34.810. *See* Order of Affirmance, Exh. 487 (ECF No. 89-4). The Court determines that Nev. Rev. Stat. §§ 34.726 and 34.810 are both adequate to support application of the procedural default doctrine. *See* Part III.C.2., *supra*. The Court also determines that the Nevada Supreme Court's application of Nev. Rev. Stat. §§ 34.726 and 34.810 was independent of federal law. *See* Part III.C.3., *supra*. McConnell does not make any showing of cause and prejudice relative to the procedural default of this claim, or any other showing that excuses the procedural default. The Court will grant Respondents' motion to dismiss Claim 2C on the ground of procedural default.

   9. *Claim 2D*

In Claim 2D, McConnell claims that his federal constitutional rights were violated because the trial court improperly failed to appoint counsel before the sentencing

hearing when it was apparent that counsel was necessary. Second Amended Petition (ECF No. 95), pp. 161–62, 173–75.

Respondents concede, and the Court finds, that Claim 2D of McConnell's second amended petition relates back to Claim 2B of his first amended petition, and, therefore, is not barred by the statute of limitations. *See* Motion to Dismiss (ECF No. 122), p. 9; Reply (ECF No. 145), p. 18; *see also* First Amended Petition (ECF No. 24), pp. 102, 105–06. The Court will deny Respondents' motion to dismiss Claim 2D on statute of limitations grounds.

Respondents argue that Claim 2D is procedurally defaulted. *See* Motion to Dismiss (ECF No. 122), pp. 23–24; Reply (ECF No. 145), p. 33. The Court agrees. McConnell first asserted this claim in his second state habeas petition. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 493, pp. 111–13 (ECF No. 96-1, pp. 112–14). The Nevada Supreme Court ruled McConnell's entire second state habeas petition to be procedurally barred under Nev. Rev. Stat. §§ 34.726 and 34.810. *See* Order of Affirmance, Exh. 487 (ECF No. 89-4). The Court determines that Nev. Rev. Stat. §§ 34.726 and 34.810 are both adequate to support application of the procedural default doctrine. *See* Part III.C.2., *supra*. The Court also determines that the Nevada Supreme Court's application of Nev. Rev. Stat. §§ 34.726 and 34.810 was independent of federal law. *See* Part III.C.3., *supra*. McConnell does not make any showing of cause and prejudice relative to the procedural default of this claim, or any other showing that excuses the procedural default. The Court will grant Respondents' motion to dismiss Claim 2D on the ground of procedural default.

> 10.    *Claim 2E*

In Claim 2E, McConnell claims that his federal constitutional rights were violated because the trial court failed to abide by its conditional order to appoint counsel when McConnell made a proper request that counsel be appointed for the limited purpose of allowing him to examine his ex-girlfriends. Second Amended Petition (ECF No. 95), pp. 161–62, 175–77.

Respondents concede, and the Court finds, that Claim 2E of McConnell's second amended petition relates back to Claim 2C of his first amended petition, and, therefore, is not barred by the statute of limitations. *See* Motion to Dismiss (ECF No. 122), p. 9; Reply (ECF No. 145), p. 18; *see also* First Amended Petition (ECF No. 24), pp. 102, 107–08. The Court will deny Respondents' motion to dismiss Claim 2E on statute of limitations grounds.

Respondents argue that Claim 2E is procedurally defaulted. *See* Motion to Dismiss (ECF No. 122), pp. 23–24; Reply (ECF No. 145), p. 33. The Court agrees. McConnell first asserted this claim in his second state habeas petition. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 493, pp. 113–14 (ECF No. 96-1, pp. 114–15). The Nevada Supreme Court ruled McConnell's entire second state habeas petition to be procedurally barred under Nev. Rev. Stat. §§ 34.726 and 34.810. *See* Order of Affirmance, Exh. 487 (ECF No. 89-4). The Court determines that Nev. Rev. Stat. §§ 34.726 and 34.810 are both adequate to support application of the procedural default doctrine. *See* Part III.C.2., *supra*. The Court also determines that the Nevada Supreme Court's application of Nev. Rev. Stat. §§ 34.726 and 34.810 was independent of federal law. *See* Part III.C.3., *supra*. McConnell does not make any showing of cause and prejudice relative to the procedural default of this claim, or any other showing that excuses the procedural default. The Court will grant Respondents' motion to dismiss Claim 2E on the ground of procedural default.

11.   *Claim 2F*

In Claim 2F, McConnell claims that his federal constitutional rights were violated because the trial court's failure to appoint counsel to examine McConnell's ex-girlfriends reduced the proceedings to a sham and a farce. Second Amended Petition (ECF No. 95), pp. 161–62, 177–92.

Respondents concede, and the Court finds, that Claim 2F of McConnell's second amended petition relates back to Claim 2D of his first amended petition, and, therefore, is not barred by the statute of limitations. *See* Motion to Dismiss (ECF No. 122), p. 9;

Reply (ECF No. 145), p. 18; *see also* First Amended Petition (ECF No. 24), pp. 102, 108–18. The Court will deny Respondents' motion to dismiss Claim 2F on statute of limitations grounds.

Respondents argue that Claim 2F is procedurally defaulted. *See* Motion to Dismiss (ECF No. 122), pp. 23–24; Reply (ECF No. 145), p. 33. The Court agrees. McConnell first asserted this claim in his second state habeas petition. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 493, pp. 114–25 (ECF No. 96-1, pp. 115–26). The Nevada Supreme Court ruled McConnell's entire second state habeas petition to be procedurally barred under Nev. Rev. Stat. §§ 34.726 and 34.810. *See* Order of Affirmance, Exh. 487 (ECF No. 89-4). The Court determines that Nev. Rev. Stat. §§ 34.726 and 34.810 are both adequate to support application of the procedural default doctrine. *See* Part III.C.2., *supra*. The Court also determines that the Nevada Supreme Court's application of Nev. Rev. Stat. §§ 34.726 and 34.810 was independent of federal law. *See* Part III.C.3., *supra*. McConnell does not make any showing of cause and prejudice relative to the procedural default of this claim, or any other showing that excuses the procedural default. The Court will grant Respondents' motion to dismiss Claim 2F on the ground of procedural default.

### 12.  *Claim 2G*

In Claim 2G, McConnell claims that his federal constitutional rights were violated because he was incapable of eliciting mitigation evidence regarding his childhood and family background. Second Amended Petition (ECF No. 95), pp. 161–62, 192–97.

Respondents concede, and the Court finds, that Claim 2G of McConnell's second amended petition relates back to Claim 2E of his first amended petition, and, therefore, is not barred by the statute of limitations. *See* Motion to Dismiss (ECF No. 122), p. 9; Reply (ECF No. 145), p. 18; *see also* First Amended Petition (ECF No. 24), pp. 102, 118–22. The Court will deny Respondents' motion to dismiss Claim 2G on statute of limitations grounds.

Respondents argue that Claim 2G is procedurally defaulted. *See* Motion to Dismiss (ECF No. 122), pp. 23–24; Reply (ECF No. 145), p. 33. The Court agrees. McConnell first asserted this claim in his second state habeas petition. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 493, pp. 125–28 (ECF No. 96-1, pp. 126–29). The Nevada Supreme Court ruled McConnell's entire second state habeas petition to be procedurally barred under Nev. Rev. Stat. §§ 34.726 and 34.810. *See* Order of Affirmance, Exh. 487 (ECF No. 89-4). The Court determines that Nev. Rev. Stat. §§ 34.726 and 34.810 are both adequate to support application of the procedural default doctrine. *See* Part III.C.2., *supra*. The Court also determines that the Nevada Supreme Court's application of Nev. Rev. Stat. §§ 34.726 and 34.810 was independent of federal law. *See* Part III.C.3., *supra*. McConnell does not make any showing of cause and prejudice relative to the procedural default of this claim, or any other showing that excuses the procedural default. The Court will grant Respondents' motion to dismiss Claim 2G on the ground of procedural default.

### 13.    Claim 2H

Claim 2H of McConnell's second amended petition is entitled "Prejudice." *See* Second Amended Petition (ECF No. 95), p. 197. There, McConnell asserts that he was prejudiced by the errors alleged in Claims 2A, 2B, 2C, 2D, 2E, 2F and 2G. *Id*. at 197–98. The Court does not understand Claim 2H to set forth a separate claim, but, rather, only to add to Claims 2A, 2B, 2C, 2D, 2E, 2F and 2G. The Court treats Claim 2H as such in this order. The motion to dismiss will be denied with respect to what is designated Claim 2H in the second amended petition.

### 14.    Claim 3

In Claim 3, McConnell claims that his death sentence is constitutionally invalid because the Nevada Supreme Court failed to strike the felony murder aggravating circumstances. Second Amended Petition (ECF No. 95), pp. 199–204.

Respondents concede, and the Court finds, that Claim 3 of McConnell's second amended habeas petition relates back to Claim 3 of his first amended petition, and that,

therefore, Claim 3 is not barred by the statute of limitations. *See* Motion to Dismiss

(ECF No. 122), p. 10; Reply (ECF No. 145), p. 19; *see also* First Amended Petition

(ECF No. 24), pp. 124–27. The Court will deny Respondents' motion to dismiss Claim 3

on statute of limitations grounds.

Respondents argue that Claim 3 is procedurally defaulted. *See* Motion to Dismiss

(ECF No. 122), p. 24; Reply (ECF No. 145), pp. 33–38. The Court, however, determines

that McConnell raised this claim on his direct appeal. *See* Appellant's Opening Brief,

Exh. 1, pp. 48–49 (ECF No. 25-2, pp. 54–55. The Nevada Supreme Court ruled on the

issue on its merits. *See McConnell*, 120 Nev. at 1049, 1062–70, 102 P.3d at 611, 620–

25. In particular, the Nevada Supreme Court ruled as follows with respect to the

contention that the felony murder aggravating circumstances should have been stricken:

> In charging McConnell with first-degree murder, the State alleged two theories: deliberate, premeditated murder and felony murder during the perpetration of a burglary. McConnell was advised of both theories when he pleaded guilty. During his testimony, McConnell admitted that he had premeditated the murder: "Nothing justifies cold-blooded, premeditated, first-degree murder, which is what I did." His other testimony and the evidence as a whole overwhelmingly supported this admission. McConnell's conviction for first-degree murder is therefore soundly based on a theory of deliberate, premeditated murder. Consequently, our ensuing analysis and decision do not invalidate the use of the felony aggravating circumstances in this case.

*McConnell*, 120 Nev. at 1062, 102 P.3d at 620. In his first state habeas petition,

McConnell raised a similar claim, focusing on the Nevada Supreme Court's ruling that

the felony murder aggravating circumstances did not have to be stricken in McConnell's

case. *See* Supplement to Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 10,

pp. 16–25 (ECF No. 106-10, pp. 17–26). On the appeal in that case, the Nevada

Supreme Court ruled that the claim was raised on McConnell's direct appeal—that it

was, in fact, "the focus of [the court's] decision on the direct appeal"—and the court

applied the law of the case doctrine and affirmed the denial of relief on the claim.

*McConnell*, 125 Nev. at 257, 212 P.3d at 317. Then, in McConnell's second state

habeas petition, he again raised the claim, further focusing it and framing it like he does

in Claim 3 in this case. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh.

493, pp. 130–33 (ECF No. 96-1, pp. 131–34). The Nevada Supreme Court ruled McConnell's entire second state habeas petition to be procedurally barred under Nev. Rev. Stat. §§ 34.726 and 34.810. *See* Order of Affirmance, Exh. 487 (ECF No. 89-4). But because the claim was asserted and addressed on its merits on McConnell's direct appeal, as was recognized by the Nevada Supreme Court on the appeal in McConnell's first state habeas action, it is not procedurally defaulted. The Court will, therefore, deny Respondents' motion to dismiss Claim 3 on procedural default grounds.

15.   *Claim 4*

In Claim 4, McConnell claims that his death sentence is unconstitutional because the mutilation aggravating circumstance is unconstitutionally vague and overbroad. Second Amended Petition (ECF No. 95), pp. 205–15.

Respondents concede, and the Court finds, that Claim 4 of McConnell's second amended habeas petition relates back to Claim 4 of his first amended petition, and that, therefore, Claim 4 is not barred by the statute of limitations. *See* Motion to Dismiss (ECF No. 122), p. 10; Reply (ECF No. 145), p. 19; *see also* First Amended Petition (ECF No. 24), pp. 128–34. The Court will deny Respondents' motion to dismiss Claim 4 on statute of limitations grounds.

Respondents argue that Claim 4 is procedurally defaulted. *See* Motion to Dismiss (ECF No. 122), pp. 24–25; Reply (ECF No. 145), pp. 38–39. This argument is well taken. On his direct appeal, McConnell claimed that the evidence did not support application of the mutilation aggravating circumstance (*see* Appellant's Opening Brief, Exh. 1, pp. 50–51 (ECF No. 25-2, pp. 56–57)); however, he did not on his direct appeal claim that the mutilation aggravating circumstance is unconstitutionally vague and overbroad. McConnell did make a claim such as that in Claim 4 in his second state habeas petition (*see* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 493, pp. 132–40 (ECF No. 96-1, pp. 133–41)), but The Nevada Supreme Court ruled McConnell's entire second state habeas petition to be procedurally barred under Nev. Rev. Stat. §§ 34.726 and 34.810. *See* Order of Affirmance, Exh. 487 (ECF No. 89-4).

The Court determines that Nev. Rev. Stat. §§ 34.726 and 34.810 are both adequate to support application of the procedural default doctrine. *See* Part III.C.2., *supra*. The Court also determines that the Nevada Supreme Court's application of Nev. Rev. Stat. §§ 34.726 and 34.810 was independent of federal law. *See* Part III.C.3., *supra*. McConnell does not make any showing of cause and prejudice relative to the procedural default of this claim, or any other showing that excuses the procedural default. The Court will grant Respondents' motion to dismiss Claim 4 on procedural default grounds.

### 16.    Claim 5

In Claim 5, McConnell claims that his death sentence is unconstitutional because the burglary aggravating circumstance is constitutionally invalid. Second Amended Petition (ECF No. 95), pp. 216–18. More specifically, McConnell claims that, because premeditated murder and the burglary he was charged with require the same *mens rea*—intent to commit murder—the burglary aggravating circumstance does not narrow the class of murderers eligible for the death penalty. *Ibid*.

Respondents concede, and the Court finds, that Claim 5 of McConnell's second amended habeas petition relates back to Claim 5 of his first amended petition, and that, therefore, Claim 5 is not barred by the statute of limitations. *See* Motion to Dismiss (ECF No. 122), p. 11; Reply (ECF No. 145), p. 19; *see also* First Amended Petition (ECF No. 24), pp. 135–37. The Court will deny Respondents' motion to dismiss Claim 5 on statute of limitations grounds.

Respondents do not argue that Claim 5 is procedurally defaulted.

### 17.    Claim 6

In Claim 6, McConnell claims that his conviction and death sentence are unconstitutional because the trial court failed to adequately apprise him of the consequences of his guilty plea. Second Amended Petition (ECF No. 95), pp. 219–22.

Respondents concede, and the Court finds, that Claim 6 of McConnell's second amended habeas petition relates back to Claim 6 of his first amended petition, and that,

1  therefore, Claim 6 is not barred by the statute of limitations. *See* Motion to Dismiss

2  (ECF No. 122), p. 11; Reply (ECF No. 145), p. 19; *see also* First Amended Petition

3  (ECF No. 24), pp. 138–40. The Court will deny Respondents' motion to dismiss Claim 6

4  on statute of limitations grounds.

5  Respondents do not argue that Claim 6 is procedurally defaulted.

6  18.  *Claim 7*

7  In Claim 7, McConnell claims that his death sentence is unconstitutional because

8  the trial court denied his request for April Robinson's pre-sentence report and curtailed

9  his cross-examination of her. Second Amended Petition (ECF No. 95), pp. 219–22.

10  Respondents concede, and the Court finds, that Claim 7 of McConnell's second

11  amended habeas petition relates back to Claim 7 of his first amended petition, and that,

12  therefore, Claim 7 is not barred by the statute of limitations. *See* Motion to Dismiss

13  (ECF No. 122), pp. 11–12; Reply (ECF No. 145), p. 19; *see also* First Amended Petition

14  (ECF No. 24), pp. 141–44. The Court will deny Respondents' motion to dismiss Claim 7

15  on statute of limitations grounds.

16  Respondents argue that Claim 7 is procedurally defaulted. *See* Motion to Dismiss

17  (ECF No. 122), p. 25; Reply (ECF No. 145), p. 39. The Court agrees. McConnell first

18  made a claim such as that in Claim 7 in his second state habeas petition. *See* Petition

19  for Writ of Habeas Corpus (Post-Conviction), Exh. 493, pp. 146–49 (ECF No. 96-1,

20  pp. 147–50). The Nevada Supreme Court ruled McConnell's entire second state habeas

21  petition to be procedurally barred under Nev. Rev. Stat. §§ 34.726 and 34.810. *See*

22  Order of Affirmance, Exh. 487 (ECF No. 89-4). The Court determines that Nev. Rev.

23  Stat. §§ 34.726 and 34.810 are both adequate to support application of the procedural

24  default doctrine. *See* Part III.C.2., *supra*. The Court also determines that the Nevada

25  Supreme Court's application of Nev. Rev. Stat. §§ 34.726 and 34.810 was independent

26  of federal law. *See* Part III.C.3., *supra*. McConnell does not make any showing of cause

27  and prejudice relative to the procedural default of this claim, or any other showing that

28

1  excuses the procedural default. The Court will grant Respondents' motion to dismiss

2  Claim 7 on procedural default grounds.

3          19.    *Claim 8A*

4          In Claim 8A, McConnell claims that his death sentence is unconstitutional

5  because the jury instructions failed to require that mitigation be outweighed by statutory

6  aggravation beyond a reasonable doubt. Second Amended Petition (ECF No. 95), pp.

7  229–31.

8          Respondents concede, and the Court finds, that Claim 8A of McConnell's second

9  amended habeas petition relates back to Claim 8A of his first amended petition, and

10  that, therefore, Claim 8A is not barred by the statute of limitations. *See* Motion to

11  Dismiss (ECF No. 122), p. 12; Reply (ECF No. 145), p. 19; *see also* First Amended

12  Petition (ECF No. 24), pp. 145–46. The Court will deny Respondents' motion to dismiss

13  Claim 8A on statute of limitations grounds.

14          Respondents argue that Claim 8A is procedurally defaulted. *See* Motion to

15  Dismiss (ECF No. 122), pp. 25–26; Reply (ECF No. 145), pp. 39–40. In response,

16  McConnell argues that he can show cause and prejudice relative to the claim, such as

17  to overcome any procedural default of the claim, on account of ineffective assistance of

18  his appellate counsel for not raising the claim on his direct appeal. *See* Opposition to

19  Motion to Dismiss (ECF No. 128), pp. 75–76. In their reply, Respondents acknowledge

20  this argument by McConnell and state that, "because McConnell claims he can

21  overcome his default by showing appellate counsel was ineffective for failing to raise

22  this on appeal, this Court should defer ruling on the procedural default issue until

23  Respondents have had a chance to address the related ineffective assistance of

24  appellate counsel claims from Ground Sixteen on the merits in an answer." Reply (ECF

25  No. 145), p. 40. The Court agrees with this approach. The Court will deny the motion to

26  dismiss Claim 8A on procedural default grounds, without prejudice to Respondents

27  asserting the procedural default defense to Claim 8A in their answer.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        20.    *Claim 8B*

In Claim 8B, McConnell claims that his death sentence is unconstitutional because the jury instructions improperly prohibited the jury from considering sympathy. Second Amended Petition (ECF No. 95), pp. 229, 231–32.

Respondents concede, and the Court finds, that Claim 8B of McConnell's second amended habeas petition relates back to Claim 8B of his first amended petition, and that, therefore, Claim 8B is not barred by the statute of limitations. *See* Motion to Dismiss (ECF No. 122), p. 12; Reply (ECF No. 145), p. 19; *see also* First Amended Petition (ECF No. 24), pp. 145–47. The Court will deny Respondents' motion to dismiss Claim 8B on statute of limitations grounds.

Respondents argue that Claim 8B is procedurally defaulted. *See* Motion to Dismiss (ECF No. 122), pp. 25–26; Reply (ECF No. 145), p. 40. The Court agrees. McConnell first made a claim such as that in Claim 8B in his second state habeas petition. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 493, pp. 150–52 (ECF No. 96-1, pp. 152–53). The Nevada Supreme Court ruled McConnell's entire second state habeas petition to be procedurally barred under Nev. Rev. Stat. §§ 34.726 and 34.810. *See* Order of Affirmance, Exh. 487 (ECF No. 89-4). The Court determines that Nev. Rev. Stat. §§ 34.726 and 34.810 are both adequate to support application of the procedural default doctrine. *See* Part III.C.2., *supra*. The Court also determines that the Nevada Supreme Court's application of Nev. Rev. Stat. §§ 34.726 and 34.810 was independent of federal law. *See* Part III.C.3., *supra*. McConnell does not make any showing of cause and prejudice relative to the procedural default of this claim, or any other showing that excuses the procedural default. The Court will grant Respondents' motion to dismiss Claim 8B on procedural default grounds.

        21.    *Claim 8C*

In Claim 8C, McConnell claims that his death sentence is unconstitutional because the reasonable doubt instruction permitted the jury to convict McConnell based

on a lesser standard of proof than is constitutionally required. Second Amended Petition (ECF No. 95), pp. 229, 232–34.

Respondents concede, and the Court finds, that Claim 8C of McConnell's second amended habeas petition relates back to Claim 8C of his first amended petition, and that, therefore, Claim 8C is not barred by the statute of limitations. *See* Motion to Dismiss (ECF No. 122), p. 12; Reply (ECF No. 145), p. 19; *see also* First Amended Petition (ECF No. 24), pp. 145, 147–48. The Court will deny Respondents' motion to dismiss Claim 8C on statute of limitations grounds.

Respondents argue that Claim 8C is procedurally defaulted. *See* Motion to Dismiss (ECF No. 122), pp. 25–26; Reply (ECF No. 145), p. 40. The Court agrees. McConnell first made a claim such as that in Claim 8C in his second state habeas petition. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 493, pp. 150, 152–53 (ECF No. 96-1, pp. 151, 153–54). The Nevada Supreme Court ruled McConnell's entire second state habeas petition to be procedurally barred under Nev. Rev. Stat. §§ 34.726 and 34.810. *See* Order of Affirmance, Exh. 487 (ECF No. 89-4). The Court determines that Nev. Rev. Stat. §§ 34.726 and 34.810 are both adequate to support application of the procedural default doctrine. *See* Part III.C.2., *supra*. The Court also determines that the Nevada Supreme Court's application of Nev. Rev. Stat. §§ 34.726 and 34.810 was independent of federal law. *See* Part III.C.3., *supra*. McConnell does not make any showing of cause and prejudice relative to the procedural default of this claim, or any other showing that excuses the procedural default. The Court will grant Respondents' motion to dismiss Claim 8C on procedural default grounds.

### 22.   *Claim 8D*

In Claim 8D, McConnell claims that his death sentence is unconstitutional because the "equal and exact justice" instruction created a likelihood that the jury would not apply the presumption of innocence and would convict McConnell based on a lesser

1    standard of proof than is constitutionally required. Second Amended Petition (ECF No.

2    95), pp. 229, 234–35.

3         Respondents concede, and the Court finds, that Claim 8D of McConnell's second

4    amended habeas petition relates back to Claim 8D of his first amended petition, and

5    that, therefore, Claim 8D is not barred by the statute of limitations. *See* Motion to

6    Dismiss (ECF No. 122), p. 12; Reply (ECF No. 145), p. 19; *see also* First Amended

7    Petition (ECF No. 24), pp. 145, 148–49. The Court will deny Respondents' motion to

8    dismiss Claim 8D on statute of limitations grounds.

9         Respondents argue that Claim 8D is procedurally defaulted. *See* Motion to

10   Dismiss (ECF No. 122), pp. 25–26; Reply (ECF No. 145), p. 40. The Court agrees.

11   McConnell first made a claim such as that in Claim 8D in his second state habeas

12   petition. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 493, pp. 150,

13   153–54 (ECF No. 96-1, pp. 151, 154–55). The Nevada Supreme Court ruled

14   McConnell's entire second state habeas petition to be procedurally barred under Nev.

15   Rev. Stat. §§ 34.726 and 34.810. *See* Order of Affirmance, Exh. 487 (ECF No. 89-4).

16   The Court determines that Nev. Rev. Stat. §§ 34.726 and 34.810 are both adequate to

17   support application of the procedural default doctrine. *See* Part III.C.2., *supra*. The

18   Court also determines that the Nevada Supreme Court's application of Nev. Rev. Stat.

19   §§ 34.726 and 34.810 was independent of federal law. *See* Part III.C.3., *supra*.

20   McConnell does not make any showing of cause and prejudice relative to the

21   procedural default of this claim, or any other showing that excuses the procedural

22   default. The Court will grant Respondents' motion to dismiss Claim 8D on procedural

23   default grounds.

24         23.   *Claim 9*

25         In Claim 9, McConnell claims that his death sentence is unconstitutional because

26   of prosecutorial misconduct. Second Amended Petition (ECF No. 95), pp. 236–40.

27         Respondents concede, and the Court finds, that Claim 9 of McConnell's second

28   amended habeas petition relates back to Claim 9 of his first amended petition, and that,

therefore, Claim 9 is not barred by the statute of limitations. *See* Motion to Dismiss (ECF No. 122), pp. 12–13; Reply (ECF No. 145), p. 19; *see also* First Amended Petition (ECF No. 24), pp. 150–53. The Court will deny Respondents' motion to dismiss Claim 9 on statute of limitations grounds.

Respondents argue that Claim 9 is procedurally defaulted in part. *See* Motion to Dismiss (ECF No. 122), p. 26; Reply (ECF No. 145), p. 40. The Court agrees. McConnell asserted a claim of prosecutorial misconduct on his direct appeal, but that claim was less extensive than Claim 9 in this case. *See* Appellant's Opening Brief, Exh. 1, pp. 33–42 (ECF No. 25-2, pp. 39–48). Comparing Claim 9 in this case to the claims of prosecutorial misconduct made by McConnell on his direct appeal, the Court determines that McConnell bases Claim 9, in part, on the following arguments allegedly made by the prosecution, but he did not include these in his prosecutorial misconduct claims on direct appeal:

- "When you cast a play in hell…." Second Amended Petition (ECF No. 95), p. 236, lines 14–20.

- "[T]hink of April … 'April, I know your dad just lost your mom. I won't kill you.'" *Id.*, p. 238, lines 1–4.

- "What do I agree with that [McConnell] said? Brian was a good man." *Id.*, p. 238, lines 10–12.

*See* Appellant's Opening Brief, Exh. 1, pp. 33–42 (ECF No. 25-2, pp. 39–48). On McConnell's direct appeal, the Nevada Supreme Court ruled on his prosecutorial misconduct claims on their merits. *See McConnell*, 120 Nev. at 1057–61, 102 P.3d at 616–19. In his second state habeas action, McConnell made a claim like that in Claim 9 in this case, and included the three allegations described above that were not asserted on his direct appeal. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 493, pp. 155–58 (ECF No. 96-1, pp. 156–59). However, the Nevada Supreme Court ruled McConnell's entire second state habeas petition to be procedurally barred under Nev. Rev. Stat. §§ 34.726 and 34.810. *See* Order of Affirmance, Exh. 487 (ECF No. 89-4). The Court determines that Nev. Rev. Stat. §§ 34.726 and 34.810 are both adequate

to support application of the procedural default doctrine. *See* Part III.C.2., *supra*. The Court also determines that the Nevada Supreme Court's application of Nev. Rev. Stat. §§ 34.726 and 34.810 was independent of federal law. *See* Part III.C.3., *supra*. McConnell does not make any showing of cause and prejudice relative to the procedural default of part of this claim, or any other showing that excuses the procedural default. The Court will grant Respondents' motion to dismiss Claim 9, on procedural default grounds, with respect to the following comments of the prosecutor alleged by McConnell to have been prosecutorial misconduct:

- "When you cast a play in hell…." Second Amended Petition (ECF No. 95), p. 236, lines 14–20.

- "[T]hink of April … 'April, I know your dad just lost your mom. I won't kill you.'" *Id.*, p. 238, lines 1–4.

- "What do I agree with that [McConnell] said? Brian was a good man." *Id.*, p. 238, lines 10–12.

     *24.    Claim 10*

In Claim 10, McConnell claims that his death sentence is unconstitutional because the trial court erroneously allowed the prosecution to introduce unduly prejudicial, lengthy, and irrelevant victim impact statements. Second Amended Petition (ECF No. 95), pp. 241–44.

Respondents concede, and the Court finds, that Claim 10 of McConnell's second amended habeas petition relates back to Claim 10 of his first amended petition, and that, therefore, Claim 10 is not barred by the statute of limitations. *See* Motion to Dismiss (ECF No. 122), p. 13; Reply (ECF No. 145), p. 19; *see also* First Amended Petition (ECF No. 24), pp. 154–56. The Court will deny Respondents' motion to dismiss Claim 10 on statute of limitations grounds.

Respondents do not argue that Claim 10 is procedurally defaulted.

1

*25.    Claim 11*

In Claim 11, McConnell claims that his death sentence is unconstitutional

because he was given inadequate notice of the prosecution's case in aggravation.

Second Amended Petition (ECF No. 95), pp. 245–48.

Respondents concede, and the Court finds, that Claim 11 of McConnell's second

amended habeas petition relates back to Claim 11 of his first amended petition, and

that, therefore, Claim 11 is not barred by the statute of limitations. *See* Motion to

Dismiss (ECF No. 122), pp. 13–14; Reply (ECF No. 145), p. 19; *see also* First Amended

Petition (ECF No. 24), pp. 157–59. The Court will deny Respondents' motion to dismiss

Claim 11 on statute of limitations grounds.

Respondents do not argue that Claim 11 is procedurally defaulted.

*26.    Claim 12*

In Claim 12, McConnell claims that his death sentence is unconstitutional

because the trial court failed to bifurcate the penalty hearing. Second Amended Petition

(ECF No. 95), pp. 249–53.

Respondents concede, and the Court finds, that Claim 12 of McConnell's second

amended habeas petition relates back to Claim 12 of his first amended petition, and

that, therefore, Claim 12 is not barred by the statute of limitations. *See* Motion to

Dismiss (ECF No. 122), p. 14; Reply (ECF No. 145), p. 19; *see also* First Amended

Petition (ECF No. 24), pp. 160–63. The Court will deny Respondents' motion to dismiss

Claim 12 on statute of limitations grounds.

Respondents do not argue that Claim 12 is procedurally defaulted.

*27.    Claim 13*

In Claim 13, McConnell claims that his death sentence is unconstitutional

because of errors committed by the trial court and the prosecution in systemically

removing all death scrupled jurors from the venire. Second Amended Petition (ECF No.

95), pp. 254–58.

Respondents concede, and the Court finds, that Claim 13 of McConnell's second amended habeas petition relates back to Claim 13 of his first amended petition, and that, therefore, Claim 13 is not barred by the statute of limitations. *See* Motion to Dismiss (ECF No. 122), p. 14; Reply (ECF No. 145), p. 19; *see also* First Amended Petition (ECF No. 24), pp. 164–66. The Court will deny Respondents' motion to dismiss Claim 13 on statute of limitations grounds.

Respondents argue that Claim 13 is procedurally defaulted. *See* Motion to Dismiss (ECF No. 122), pp. 26–27; Reply (ECF No. 145), p. 41. McConnell asserted a claim such as that in Claim 13, regarding some of the alleged death scrupled jurors, on the appeal in his first state habeas petition. *See* Appellant's Opening Brief, Exh. 6, pp. 18–20 (ECF No. 25-6, ECF No. 25-7, pp.38–40). The Nevada Supreme Court affirmed the dismissal of this claim under Nev. Rev. Stat. § 34.810, ruling that the claim should have been raised on direct appeal. *McConnell*, 125 Nev. at 258, 212 P.3d at 317. McConnell subsequently asserted the claim, regarding all the alleged death scrupled jurors, in his second state habeas petition. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 493, pp. 169–71 (ECF No. 96-1, pp. 170–73). The Nevada Supreme Court ruled McConnell's entire second state habeas petition to be procedurally barred under Nev. Rev. Stat. §§ 34.726 and 34.810. *See* Order of Affirmance, Exh. 487 (ECF No. 89-4). McConnell, though, argues that he can show cause and prejudice, such as to overcome any procedural default of the claim, on account of ineffective assistance of his appellate counsel for not raising the claim on his direct appeal. *See* Opposition to Motion to Dismiss (ECF No. 128), pp. 76–77. Therefore, because the resolution of this issue is intertwined with the merits of this claim and the merits of the related claim of ineffective assistance of appellate counsel, the Court will deny the motion to dismiss Claim 13 on procedural default grounds, without prejudice to Respondents asserting the procedural default defense to Claim 13 their answer.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 28. Claim 14

In Claim 14, McConnell claims that his death sentence is unconstitutional because of jury misconduct. Second Amended Petition (ECF No. 95), pp. 259–61.

Respondents concede, and the Court finds, that Claim 14 of McConnell's second amended habeas petition relates back to Claim 14 of his first amended petition, and that, therefore, Claim 14 is not barred by the statute of limitations. *See* Motion to Dismiss (ECF No. 122), pp. 14–15; Reply (ECF No. 145), p. 19; *see also* First Amended Petition (ECF No. 24), pp. 167–68. The Court will deny Respondents' motion to dismiss Claim 14 on statute of limitations grounds.

Respondents argue that Claim 14 is procedurally defaulted. *See* Motion to Dismiss (ECF No. 122), p. 27; Reply (ECF No. 145), p. 41. The Court agrees. McConnell first made a claim such as that in Claim 14 in his second state habeas petition. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 493, pp. 172–73 (ECF No. 96-1, pp. 173–74). The Nevada Supreme Court ruled McConnell's entire second state habeas petition to be procedurally barred under Nev. Rev. Stat. §§ 34.726 and 34.810. *See* Order of Affirmance, Exh. 487 (ECF No. 89-4). The Court determines that Nev. Rev. Stat. §§ 34.726 and 34.810 are both adequate to support application of the procedural default doctrine. *See* Part III.C.2., *supra*. The Court also determines that the Nevada Supreme Court's application of Nev. Rev. Stat. §§ 34.726 and 34.810 was independent of federal law. *See* Part III.C.3., *supra*. McConnell does not make any showing of cause and prejudice relative to the procedural default of this claim, or any other showing that excuses the procedural default. The Court will grant Respondents' motion to dismiss Claim 14 on procedural default grounds.

### 29. Claim 15A

In Claim 15A, McConnell claims that his conviction and death sentence are unconstitutional because the Nevada Supreme Court's automatic review of capital sentences is inadequate. Second Amended Petition (ECF No. 95), pp. 262–64.

Respondents concede, and the Court finds, that Claim 15A of McConnell's second amended habeas petition relates back to Claim 15A of his first amended petition, and that, therefore, Claim 15A is not barred by the statute of limitations. *See* Motion to Dismiss (ECF No. 122), p. 15; Reply (ECF No. 145), p. 19; *see also* First Amended Petition (ECF No. 24), pp. 169–70. The Court will deny Respondents' motion to dismiss Claim 15A on statute of limitations grounds.

Respondents argue that Claim 15A is procedurally defaulted. *See* Motion to Dismiss (ECF No. 122), p. 27; Reply (ECF No. 145), pp. 41–42. In response, McConnell argues that he can show cause and prejudice, such as to overcome any procedural default of the claim, on account of ineffective assistance of his appellate counsel for not raising the claim on his direct appeal. *See* Opposition to Motion to Dismiss (ECF No. 128), pp. 77–78. In their reply, Respondents acknowledge this argument by McConnell and state that, "because McConnell claims he can overcome his defaults by showing appellate counsel was ineffective for failing to raise them on appeal, this Court should defer ruling on dismissal of Claim Fifteen until Respondents have had a chance to address the related ineffective assistance of appellate counsel claims from Claim Sixteen on the merits in an answer." Reply (ECF No. 145), pp. 41–42. The Court agrees with this approach. The Court will deny the motion to dismiss Claim 15A on procedural default grounds, without prejudice to Respondents asserting the procedural default defense to Claim 15A in their answer.

### 30.    Claim 15B

In Claim 15B, McConnell claims that his conviction and death sentence are unconstitutional because his *Faretta* hearing, plea hearing, sentencing, and review on direct appeal were conducted before elected officials. Second Amended Petition (ECF No. 95), pp. 262, 264–68.

Respondents concede, and the Court finds, that Claim 15B of McConnell's second amended habeas petition relates back to Claim 15B of his first amended petition, and that, therefore, Claim 15B is not barred by the statute of limitations. *See*

Motion to Dismiss (ECF No. 122), p. 15; Reply (ECF No. 145), p. 19; *see also* First Amended Petition (ECF No. 24), pp. 170–73. The Court will deny Respondents' motion to dismiss Claim 15B on statute of limitations grounds.

Respondents argue that Claim 15B is procedurally defaulted. *See* Motion to Dismiss (ECF No. 122), p. 27; Reply (ECF No. 145), pp. 41–42. In response, McConnell argues that he can show cause and prejudice, such as to overcome any procedural default of the claim, on account of ineffective assistance of his appellate counsel for not raising the claim on his direct appeal. *See* Opposition to Motion to Dismiss (ECF No. 128), p. 79. In their reply, here again, Respondents acknowledge this argument by McConnell and state that, "because McConnell claims he can overcome his defaults by showing appellate counsel was ineffective for failing to raise them on appeal, this Court should defer ruling on dismissal of Claim Fifteen until Respondents have had a chance to address the related ineffective assistance of appellate counsel claims from Claim Sixteen on the merits in an answer." Reply (ECF No. 145), pp. 41–42. The Court agrees with this approach. The Court will deny the motion to dismiss Claim 15B on procedural default grounds, without prejudice to Respondents asserting the procedural default defense to Claim 15B in their answer.

### 31. *Claim 16*

In Claim 16, McConnell claims that his conviction and death sentence are unconstitutional because of ineffective assistance of his appellate counsel because his appellate counsel was subject to conflicts of interest and failed to raise issues on appeal. Second Amended Petition (ECF No. 95), pp. 269–80.

Respondents argue that Claim 16 is, in part, barred by the statute of limitations. *See* Motion to Dismiss (ECF No. 122), pp. 15–16; Reply (ECF No. 145), p. 20. Specifically, Respondents argue that in Claim 16 of his first amended petition McConnell alleged only the conflict of interest caused by the Washoe County Public Defender's ("WCPD's") prior representation of April Robinson and a confidential informant, whereas in his second amended petition he alleges both that conflict and

another conflict, the second being a conflict caused by the WCPD's representation of McConnell both before the trial court and the appellate court. In his second amended petition, McConnell claims that, because of the two conflicts of interest, his appellate counsel did not raise the claims asserted in Claims 1, 2 and 7. Those claims, though, are related to the WCPD's alleged conflict caused by prior representation of Robinson and the informant. The Court determines that, with respect to the prejudice McConnell alleges resulting from the WCPD's conflicts of interest, Claim 16 cannot be parsed in the manner suggested by Respondents. In other words, Claim 16 in the second amended petition, to the extent based on conflicts of interest of the WCPD, arises from the same core operative facts—including the failure to raise on appeal the claims in Claims 1, 2 and 7—as the claims in Claim 16 in the first amended petition. The Court determines that Claim 16 in the second amended petition, in its entirety, relates back to Claim 16 in the first amended petition and is not barred by the statute of limitations. The Court will deny Respondents' motion to dismiss Claim 16 on statute of limitations grounds.

Respondents argue that Claim 16 is, in part, procedurally defaulted. *See* Motion to Dismiss (ECF No. 122), pp. 27–28; Reply (ECF No. 145), pp. 42–43. Here, Respondents point out that McConnell did not, prior to his second state habeas petition, claim in state court that his appellate counsel was ineffective for failing to assert the claims in Claims 2, 4, 8B, 8C and 8D, and he argues that, therefore, Claim 16 is procedurally defaulted to the extent of those claims. *See id.*; *see also* Petition for Writ of Habeas Corpus, Exh. 5 (ECF No. 106-5); Supplement to Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 10 (ECF No. 106-10); Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 493 (ECF No. 96-1). This argument is well taken. McConnell's claims that his appellate counsel was ineffective for failing to assert, on his direct appeal, the claims in Claims 2, 4, 8B, 8C and 8D, were first asserted in McConnell's second state habeas petition and were ruled procedurally barred under Nev. Rev. Stat. §§ 34.726 and 34.810 in that case. *See* Order of Affirmance, Exh. 487

(ECF No. 89-4). The Court determines that Nev. Rev. Stat. §§ 34.726 and 34.810 are both adequate to support application of the procedural default doctrine. *See* Part III.C.2., *supra*. The Court also determines that the Nevada Supreme Court's application of Nev. Rev. Stat. §§ 34.726 and 34.810 was independent of federal law. *See* Part III.C.3., *supra*. McConnell does not make any showing of cause and prejudice relative to the procedural default of these claims, or any other showing that excuses these procedural defaults. The Court will grant Respondents' motion to dismiss Claim 16, on procedural default grounds, to the extent that McConnell claims that his appellate counsel was ineffective for failing to assert, on his direct appeal, the claims in Claims 2, 4, 8B, 8C and 8D.

     *32.* *Claim 17*

   In Claim 17, McConnell claims that his federal constitutional rights were violated because of the cumulative effect of the errors described in his second amended petition. Second Amended Petition (ECF No. 95), p. 281. This cumulative error claim is procedurally viable—not barred by the statute of limitations and not procedurally defaulted—because there are underlying claims in McConnell's second amended petition that are not dismissed in this order. The Court will deny the motion to dismiss with respect to Claim 17.

     *33.* *Claim 18A1*

   In Claim 18A1, McConnell claims that his death sentence is unconstitutional because execution by lethal injection is unconstitutional in all circumstances. Second Amended Petition (ECF No. 95), pp. 282–92.

   Respondents concede, and the Court finds, that Claim 18A1 of McConnell's second amended habeas petition relates back to Claim 18 of his first amended petition, and that, therefore, Claim 18A1 is not barred by the statute of limitations. *See* Motion to Dismiss (ECF No. 122), p. 17; Reply (ECF No. 145), p. 21; *see also* First Amended Petition (ECF No. 24), pp. 177–91. The Court will deny Respondents' motion to dismiss Claim 18A1 on statute of limitations grounds.

Respondents argue that Claim 18A1 is procedurally defaulted. *See* Motion to Dismiss (ECF No. 122), p. 29; Reply (ECF No. 145), pp. 44–45. The Court agrees. McConnell has never made a claim in state court that lethal injection is unconstitutional in all circumstances. *See* Appellant's Opening Brief, Exh. 1 (ECF No. 25-2); Petition for Writ of Habeas Corpus, Exh. 5 (ECF No. 106-5); Supplement to Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 10 (ECF No. 106-10); Appellant's Opening Brief, Exh. 6 (ECF No. 25-6, ECF No. 25-7, pp. 1–28); Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 493 (ECF No. 96-1); Appellant's Opening Brief, Exh. 484 (ECF No. 89-1). The Court determines, then, that this claim is unexhausted, but that if McConnell were to return to state court to exhaust the claim it would be ruled procedurally barred. *See* Part III.B.2., *supra*. Therefore, the anticipatory default doctrine applies, and the Court considers this claim to be technically exhausted but procedurally defaulted. *See Dickens*, 740 F.3d at 1317. McConnell makes no showing to overcome this procedural default. The Court will grant Respondents' motion to dismiss Claim 18A1 on procedural default grounds.

### 34.    Claim 18A2

In Claim 18A2, McConnell claims that his death sentence is unconstitutional because execution by lethal injection as it would be carried out in Nevada is unconstitutional. Second Amended Petition (ECF No. 95), pp. 282, 292–301.

Respondents argue that this claim is time-barred, unexhausted in state court, and not ripe. *See* Motion to Dismiss (ECF No. 122), pp. 17, 30–31; Reply (ECF No. 145), pp. 21, 44, 47. Respondents raise serious questions about the procedural viability of this claim; however, as it is unclear whether the State has yet established the protocol by which McConnell's execution would be conducted, the Court will deny Respondents' motion to dismiss Claim 18A2 and will leave these questions, and any other issues concerning the claim, to be determined after Respondents file an answer and McConnell a reply. The denial of the motion to dismiss this claim is without

1  prejudice to Respondents raising the same arguments regarding the claim in their

2  answer.

3           *35.    Claim 18B*

4           In Claim 18B, McConnell claims that his death sentence is unconstitutional

5  because Nevada's death-penalty scheme does not narrow the class of persons eligible

6  for the death penalty. Second Amended Petition (ECF No. 95), pp. 282, 301–02.

7           Respondents argue that Claim 18B is barred by the statute of limitations. *See*

8  Motion to Dismiss (ECF No. 122), p. 17; Reply (ECF No. 145), p. 21. The Court

9  disagrees. Claim 18B of McConnell's second amended petition shares a common core

10  of operative fact with Claim 19 in McConnell's original petition. *See* Petition for Writ of

11  Habeas Corpus (ECF No. 1), pp. 136–42. Claim 18B therefore relates back to

12  McConnell's original petition and is not barred by the statute of limitations. The Court will

13  deny Respondents' motion to dismiss Claim 18B on statute of limitations grounds.

14          Respondents argue that Claim 18B is procedurally defaulted. *See* Motion to

15  Dismiss (ECF No. 122), p. 29; Reply (ECF No. 145), p. 45. Here again, the Court

16  disagrees. McConnell asserted such a claim on his direct appeal. *See* Appellant's

17  Opening Brief, Exh. 1, pp. 46–47 (ECF No. 25-2, pp. 52–53). The Court will deny

18  Respondents' motion to dismiss Claim 18B on procedural default grounds.

19          *36.    Claim 18C*

20          In Claim 18C, McConnell claims that the death penalty is unconstitutional.

21  Second Amended Petition (ECF No. 95), pp. 282, 303–04.

22          Respondents argue that Claim 18C is barred by the statute of limitations. *See*

23  Motion to Dismiss (ECF No. 122), p. 17; Reply (ECF No. 145), p. 21. The Court

24  disagrees. Claim 18C of McConnell's second amended petition shares a common core

25  of operative fact with Claim 18 in McConnell's original petition. *See* Petition for Writ of

26  Habeas Corpus (ECF No. 1), pp. 122–34. Claim 18C therefore relates back to

27  McConnell's original petition and is not barred by the statute of limitations. The Court will

28  deny Respondents' motion to dismiss Claim 18C on statute of limitations grounds.

Respondents argue that Claim 18C is procedurally defaulted. *See* Motion to Dismiss (ECF No. 122), pp. 29–30; Reply (ECF No. 145), p. 45. The Court agrees. McConnell did not assert this claim on his direct appeal. *See* Appellant's Opening Brief, Exh. 1 (ECF No. 25-2). McConnell did assert such a claim in his first state habeas action (*see* Supplement to Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 10, pp. 34–73 (ECF No. 106-10, pp. 35–74)), but the Nevada Supreme Court ruled the claim to be procedurally barred under Nev. Rev. Stat. § 34.810 because it was not raised on direct appeal. *McConnell*, 125 Nev. at 258, 212 P.3d at 317. The Court determines that Nev. Rev. Stat. § 34.810 is adequate to support application of the procedural default doctrine. *See* Part III.C.2., *supra*. The Court also determines that the Nevada Supreme Court's application of Nev. Rev. Stat. § 34.810 was independent of federal law. McConnell does not make any showing of cause and prejudice relative to the procedural default of this claim, or any other showing that excuses the procedural default. The Court will grant Respondents' motion to dismiss Claim 18C on procedural default grounds.

### 37.  Claim 18D

In Claim 18D, McConnell claims that Nevada's death-penalty scheme is unconstitutional because executive clemency is unavailable. Second Amended Petition (ECF No. 95), pp. 282, 304–05.

Respondents concede, and the Court finds, that Claim 18D of McConnell's second amended habeas petition relates back to Claim 18 of his first amended petition, and that, therefore, Claim 18D is not barred by the statute of limitations. *See* Motion to Dismiss (ECF No. 122), pp. 17–18; Reply (ECF No. 145), p. 22; *see also* First Amended Petition (ECF No. 24), pp. 177–91. The Court will deny Respondents' motion to dismiss Claim 18D on statute of limitations grounds.

Respondents argue that Claim 18D is procedurally defaulted. *See* Motion to Dismiss (ECF No. 122), pp. 29–30; Reply (ECF No. 145), pp. 45–46. The Court agrees. McConnell has never made a claim in state court that executive clemency is

unavailable. *See* Appellant's Opening Brief, Exh. 1 (ECF No. 25-2); Petition for Writ of Habeas Corpus, Exh. 5 (ECF No. 106-5); Supplement to Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 10 (ECF No. 106-10); Appellant's Opening Brief, Exh. 6 (ECF No. 25-6, ECF No. 25-7, pp. 1–28); Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 493 (ECF No. 96-1); Appellant's Opening Brief, Exh. 484 (ECF No. 89-1). The Court determines, then, that this claim is unexhausted, but that if McConnell were to return to state court to exhaust the claim it would be ruled procedurally barred. *See* Part III.B.2., *supra*. Therefore, the anticipatory default doctrine applies, and the Court considers this claim to be technically exhausted but procedurally defaulted. *See* *Dickens*, 740 F.3d at 1317. The Court will grant Respondents' motion to dismiss Claim 18D on procedural default grounds.

> 38.   *Claim 18E*

In Claim 18E, McConnell claims that Nevada's death-penalty scheme operates in an unconstitutionally arbitrary and capricious manner. Second Amended Petition (ECF No. 95), pp. 282, 305. This claim is essentially the same as Claim 18B, albeit with less detail. The Court will deny Respondents' motion to dismiss this claim for the same reasons it denies Respondents' motion to dismiss Claim 18B. *See* Part III.D.35., *supra*.

> 39.   *Claim 18F*

In Claim 18F, McConnell claims that his convictions and death sentence are unconstitutional because his trial and appellate counsel were ineffective for failing to assert the claims in Claims 18A, 18B, 18C, 18D and 18E. Second Amended Petition (ECF No. 95), pp. 282, 305.

Respondents argue that Claim 18F is barred by the statute of limitations. *See* Motion to Dismiss (ECF No. 122), p. 18; Reply (ECF No. 145), p. 22. The Court agrees with respect to parts of Claim 18F. The Court finds that all of the substantive claims in Claims 18A1, 18A2, 18B, 18C, 18D and 18E were asserted in either McConnell's original petition or his first amended petition, or both. *See* Parts III.D.33., III.D.35., III.D.36, III.D.37., III.D.38., *supra*; *see also* Petition for Writ of Habeas Corpus (ECF No.

1), pp. 69–81, 122–34; 136–42; First Amended Petition (ECF No. 24), pp. 177–91. However, in his original and first amended petitions, it was only as to some of those substantive claims that McConnell asserted ineffective assistance of his trial or appellate counsel for failure to raise the claims. In his original petition, McConnell claimed ineffective assistance of trial counsel with respect to the claim in Claim 18A2 (the claim that execution by lethal injection as it would be carried out in Nevada is unconstitutional). *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 81. Also in his original petition, McConnell claimed ineffective assistance of appellate counsel with respect to the claims in Claims 18A2, 18B (the claim that Nevada's death-penalty scheme does not narrow the class of persons eligible for the death penalty), 18C (the claim that the death penalty is unconstitutional), and 18E (another claim that Nevada's death-penalty scheme does not narrow the class of persons eligible for the death penalty). *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 157. In his first amended petition, McConnell did not claim ineffective assistance of either trial or appellate counsel regarding any of the claims in Claims 18A1, 18A2, 18B, 18C, 18D and 18E. *See* First Amended Petition (ECF No. 24). Therefore, with respect to the claims of ineffective assistance of trial counsel regarding Claim 18A2 and ineffective assistance of appellate counsel regarding Claims 18A2, 18B, 18C and 18E, the Court finds that McConnell's claims in 18F relate back to his original petition and are not barred by the statute of limitations; the remainder of the claims in Claim 18F do not relate back and are barred by the statute of limitations, and the motion to dismiss will be granted as to those claims on statute of limitations grounds.

Respondents argue that Claim 18F is procedurally defaulted. *See* Motion to Dismiss (ECF No. 122), p. 30; Reply (ECF No. 145), pp. 45–46. The Court agrees with respect to all but one claim in Claim 18F. Other than the claim of ineffective assistance of appellate counsel for not raising Claim 18C on his direct appeal, McConnell has never made any of the claims of ineffective assistance of counsel in Claim 18F in state court. *See* Appellant's Opening Brief, Exh. 1 (ECF No. 25-2); Petition for Writ of Habeas

Corpus, Exh. 5 (ECF No. 106-5); Supplement to Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 10 (ECF No. 106-10); Appellant's Opening Brief, Exh. 6 (ECF No. 25-6, ECF No. 25-7, pp. 1–28); Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 493 (ECF No. 96-1); Appellant's Opening Brief, Exh. 484 (ECF No. 89-1). In his first state habeas action, McConnell asserted a claim that his appellate counsel was ineffective for not raising the claim in Claim 18C (the claim that the death penalty is unconstitutional) on his direct appeal (*see* Supplement to Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 10, pp. 34–73, 113 (ECF No. 106-10, pp. 35–74, 114)), and the Nevada Supreme Court appears to have affirmed the denial of relief on that claim without discussion. *See McConnell*, 125 Nev. 243, 212 P.3d 307. The remainder of the claims in Claim 18F are unexhausted in state court. The Court determines, though, that if McConnell were to return to state court to exhaust those claims they would be ruled procedurally barred. *See* Part III.B.2., *supra*. Therefore, the anticipatory default doctrine applies, and the Court considers the claims in Claim 18F, with the exception of the claim of ineffective assistance of appellate counsel with respect to Claim 18C, to be technically exhausted but procedurally defaulted (*see Dickens*, 740 F.3d at 1317), and the Court will grant the motion to dismiss Claim 18F on procedural default grounds to that extent.

So, summarizing the Court's rulings regarding Claim 18F:

- the claim of ineffective assistance of trial counsel, regarding Claim 18A1 is dismissed on both statute of limitations and procedural default grounds;

- the claim of ineffective assistance of trial counsel, regarding Claim 18A2 is dismissed on procedural default grounds;

- the claim of ineffective assistance of trial counsel, regarding Claim 18B is dismissed on both statute of limitations and procedural default grounds;

- the claim of ineffective assistance of trial counsel, regarding Claim 18C is dismissed on both statute of limitations and procedural default grounds;

-     the claim of ineffective assistance of trial counsel, regarding Claim 18D is dismissed on both statute of limitations and procedural default grounds;

-     the claim of ineffective assistance of trial counsel, regarding Claim 18E is dismissed on both statute of limitations and procedural default grounds;

-     the claim of ineffective assistance of appellate counsel, regarding Claim 18A1 is dismissed on both statute of limitations and procedural default grounds;

-     the claim of ineffective assistance of appellate counsel, regarding Claim 18A2 is dismissed on procedural default grounds;

-     the claim of ineffective assistance of appellate counsel, regarding Claim 18B is dismissed on procedural default grounds;

-     the motion to dismiss the claim of ineffective assistance of appellate counsel regarding Claim 18C is denied;

-     the claim of ineffective assistance of appellate counsel, regarding Claim 18D is dismissed on both statute of limitations and procedural default grounds;

-     the claim of ineffective assistance of appellate counsel, regarding Claim 18E is dismissed on procedural default grounds.

**E.   Motion for Evidentiary Hearing**

In his motion for evidentiary hearing (ECF No. 130), McConnell requests an evidentiary hearing to establish that he received ineffective assistance of his appellate and post-conviction counsel and can therefore show cause and prejudice with respect to various of his claims. *See* Motion for Evidentiary Hearing (ECF No. 130). However, with respect to the question whether McConnell can show cause and prejudice for any procedural default on account of ineffective assistance of his appellate or post-conviction counsel, the Court defers consideration of those issues until after the parties file an answer and reply and the merits of McConnell's claims are fully briefed. Therefore, an evidentiary hearing on those issues is unwarranted at this time. McConnell's motion for an evidentiary hearing to support his opposition to the motion to dismiss will be denied, without prejudice. McConnell may file a new motion for an evidentiary hearing, if factually and legally justified, in conjunction with his reply to

Respondents' answer, as contemplated in the scheduling order entered December 4, 2019 (ECF No. 91).

## IV.    CONCLUSION

**IT IS THEREFORE ORDERED** that Respondents' Motion to Dismiss (ECF No. 122) is **GRANTED IN PART AND DENIED IN PART**. The following claims in Petitioner's second amended habeas petition are dismissed:

- Claim 2A;

- Claim 2C;

- Claim 2D;

- Claim 2E;

- Claim 2F;

- Claim 2G;

- Claim 4;

- Claim 7;

- Claim 8B;

- Claim 8C;

- Claim 8D;

- Claim 9, to the extent the claim is based on the following comments alleged by McConnell to have been prosecutorial misconduct:

  - "When you cast a play in hell…." Second Amended Petition (ECF No. 95), p. 236, lines 14–20;

  - "[T]hink of April … 'April, I know your dad just lost your mom. I won't kill you.'" *Id*., p. 238, lines 1–4; and

  - "What do I agree with that [McConnell] said? Brian was a good man." *Id*., p. 238, lines 10–12;

- Claim 14;

- Claim 16, to the extent that McConnell claims that his appellate counsel was ineffective for failing to assert, on his direct appeal, the claims in Claims 2, 4, 8B, 8C and 8D;

- Claim 18A1;

- Claim 18C;

-     Claim 18D;

-     Claim 18F, except the claim that McConnell's appellate counsel was ineffective for not raising the claim in Claim 18C on his direct appeal.

In all other respects, the motion to dismiss is denied.

    **IT IS FURTHER ORDERED** that Petitioner's Motion for Evidentiary Hearing (ECF No. 130) is **DENIED**.

    **IT IS FURTHER ORDERED** that Respondents shall, within 180 days from the date of this order, file an answer, responding to the remaining claims in Petitioner's Second Amended Petition for Writ of Habeas Corpus (ECF No. 95). The time for Petitioner to file a reply to Respondents' answer, as set forth in the December 4, 2019, scheduling order (ECF No. 91), will be extended to 120 days. In all other respects, the schedule for further proceedings set forth in the December 4, 2019, scheduling order (ECF No. 91) will remain in effect.

    **IT IS FURTHER ORDERED** that, pursuant to Federal Rule of Civil Procedure 25(d), William Reubart is substituted for William Gittere as the respondent warden. The Clerk of the Court is directed to update the docket to reflect this change.

DATED THIS _24_ day of _____ July _____, 2022.

_____,
GLORIA M. NAVARRO
UNITED STATES DISTRICT JUDGE